**UNITED STATES of America ex rel.
Robert T. BURKE, Petitioner,**

v.

**Vincent R. MANCUSI, Warden, Attica
State Prison, Respondent.**

No. 67–C–921.

United States District Court
E. D. New York.

Nov. 15, 1967.

Robert T. Burke, in pro. per.

Louis L. Lefkowitz, Atty. Gen., of the State of New York, New York City, for respondent.

## MEMORANDUM OF DECISION AND ORDER

MISHLER, District Judge.

This petition for a writ of habeas corpus attacks the validity of a judgment of conviction for unarmed robbery in the first degree entered against Robert T. Burke, the petitioner, in the County Court of Queens County on June 4, 1962. In addition to the above conviction, the petitioner is presently serving a concurrent sentence of 7½ to 15 years imposed on July 11, 1962 in Nassau County. No appeal was taken from the latter judgment, and its validity is not challenged.

The Queens grand jury returned two separate indictments against the peti-

tioner; one charging him with the crime of grand larceny in the first degree, and the other accusing him of robbery in the first degree and several lesser included crimes. At his arraignment, the petitioner pleaded not guilty and the court appointed James E. Mulvaney, Esq. to represent him.

On February 20, 1962, the petitioner and his counsel appeared in court before the Honorable J. Irwin Shapiro, County Judge of Queens County. Assistant District Attorney Morton Greenspan appeared for the state. At that time, the petitioner's counsel told the court that Assistant District Attorney Frank Cacciatore, the assistant in charge of the case, who was then outside the courtroom, had indicated that the state would accept a plea to attempted armed robbery in the first degree. The court accepted counsel at his word, and Mr. Greenspan indicated that under the circumstances the state would approve the acceptance of the plea. Thereupon, Mr. Mulvaney formally requested the court's permission to withdraw Mr. Burke's plea of not guilty, and to enter a plea of guilty to the lesser offense. In an effort to determine whether the petitioner understood his attorney's application, and was changing his plea voluntarily, the court queried him on the events of the robbery. During the course of the questioning, Mr. Burke admitted having committed several armed robberies.[1]

At this point, however, Mr. Cacciatore entered the courtroom and denied that a final agreement had been reached on an acceptable plea. Therefore, the court declared that it would refuse to accept the proffered plea until the state's position had been clarified, and suggested that counsel resume discussing the matter.

The petitioner claims that he then advised his attorney that he wanted to stand trial. When Mr. Mulvaney discussed the matter with Mr. Cacciatore, however, the latter raised the petitioner's confession in open court, and asserted that it would be admissible at the trial and would ensure a conviction. Mr. Mulvaney informed the petitioner of the state's position and stated that he believed that both the offer to plead guilty and the confession would be admissible at a trial.[2]

---

1. Part of the questioning went as follows: (Transcript of proceedings before the Honorable J. Irwin Shapiro, County Court, Queens County on February 20, 1962)

Q. Tell me, what did you do with Warrelman on September 18, 1961?
A. September 18th?
Q. Yes.
A. I committed the crime of Armed Robbery.
Q. How?
A. With a rifle.
Q. What else did you have besides a rifle? Do you have an automobile?
A. Yes.
Q. Who drove?
A. I drove.
Q. Was this a store or what?
A. It was a bar and grill.
Q. Was a woman involved? Or a man involved?
A. A man, I believe. There were several patrons in the bar.
Q. This was one of several robberies, is that the reason you are confused?

A. Yes. (Transcript, p. 6)
Then, turning to the co-defendant, the court continued:
*   *   *   *   *
Q. What part did you play in this robbery? What did you do?
A. I just went along on it.
Q. What do you mean you just went along on it?
A. I know I was doing wrong when I walked in there.
Q. How were you supposed to split the money?
A. I will tell the truth, Your Honor, everything done on the impulse of the moment.
Q. How many robberies did you do?
A. Six.
Q. How did you split the money?
A. Counted and took so much and that was it.
Q. You got some and he got some.
A. Yes, sir. (Transcript, p. 7)

2. The petition contains the following allegations:
*   *   *   The Assistant Cacciatore recalled to counsel that [the] petitioner

The petitioner maintains that as a result of his reliance upon his counsel's recount of the negotiations and legal advice, he was given the impression that the admission that he had just made to the court would be used as a "whipping post," and that he would incur the court's wrath if he chose to stand trial. Accordingly, the petitioner says, he agreed to plead guilty to the crime of unarmed robbery in the first degree. On June 4, 1962, Judge Shapiro sentenced him to a prison term of 15 to 30 years. The judgment of conviction was affirmed, and leave to appeal to the Court of Appeals was denied.[3]

Thereafter, the petitioner applied to the United States District Court for the Southern District of New York for a writ of habeas corpus, but on February 10, 1964, Judge McMahon denied the application for failure to pursue the available state post-conviction remedies.[4] A subsequent application for a writ was denied by Judge Weinfeld on July 8, 1964 on the ground that it was premature, since even if the petitioner's claim were upheld, he would be neither immediately discharged nor released on bail.[5]

Reverting to the state courts, the petitioner's efforts to secure a writ of error coram nobis were unsuccessful. Judge Shapiro denied the petition without a hearing and his order was affirmed.[6] Returning to the federal courts, Judge

Weinfeld again denied the petitioner's application, indicating that even if the court were to accept the applicant's theory, his petition would still be premature because he would not be eligible for parole on his Nassau County conviction until July, 1967.[7]

■ Since it appears that the petitioner is now eligible for parole under the Nassau County sentence, this court must decide whether a writ of habeas corpus properly lies where a petitioner's opportunity for parole under an admittedly valid conviction is thwarted by the existence of a concurrent conviction of disputed validity.

Essentially the same question was presented to the Supreme Court in McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238 (1934), where the petitioner attacked his conviction and sentence under the third count of a three count indictment. He had been convicted and sentenced on all three counts, the sentences under the first two counts to run concurrently with each other, but the sentence under count three to run consecutively with the one imposed under count two.

When his petition reached the Supreme Court, however, the term imposed under the second count, less time off for good behavior, had not yet expired. Therefore, technically, the petitioner was not being detained pursuant to the challeng-

had already made a confession in open court (prior plea) and that if [the] petitioner did stand trial the People would use that confession to convict him.

(c) Assigned counsel then informed [the] petitioner of the People's intentions, and also stated that it was his (counsel) [sic] opinion that the earlier plea and confession could be used in evidence if the case went to trial.

(d) Relying on the information relayed from the Assistant Cacciatore, [the] petitioner was given the impression that he would incur the wrath of the Court by proceeding to trial because he had already confessed his guilt, and that the earlier confession would be used as a whipping post and that he had no chance at all of obtaining a verdict of not guilty.

(e) Had [the] petitioner not been told that his confession would be used at trial he would of gone to trial as indicated to assigned counsel rather than re-plead to the highest count of the indictment. (Petition, p. 7)

3. People v. Burke, 19 App.Div.2d 696, 242 N.Y.S.2d 478 (2d Dep't 1963) (mem.)

4. United States ex rel. Burke v. Fay, Docket No. 64 Civ. 96, S.D.N.Y., February 10, 1964.

5. United States ex rel. Burke p. Fay, 231 F.Supp. 385, (S.D.N.Y.1964).

6. People v. Burke, 24 App.Div.2d 705, 261 N.Y.S.2d 1005 (2d Dep't 1965) (mem.).

7. United States ex rel. Burke v. Follette, Docket No. 65 Civ. 88, S.D.N.Y., March 17, 1966.

ed conviction and sentence. The Court concluded that a writ of habeas corpus is unavailable under such circumstances, and suggested that the appropriate procedure would be to mandamus the parole board to consider the prisoner's application.

If *McNally* rested solely upon the point that the petitioner had not begun serving under the challenged conviction and sentence, the case at bar, wherein the sentences were imposed concurrently, would be readily distinguishable. In that case, however, after consulting the history of the Great Writ and judicial precedent, the Court declared that the purpose of a habeas corpus proceeding is to inquire into the legality of the detention, and that if the detention is found to be unlawful, the only judicial relief authorized is the prisoner's discharge or his admission to bail. McNally v. Hill, supra, at 136–137, 55 S.Ct. at 26. Accord, United States ex rel. Kling v. LaVallee, 306 F.2d 199, 203 (2d Cir. 1962) (concurring opinion); United States ex rel. Burke v. Fay, 231 F.Supp. 385, 386 (S.D.N.Y.1964). Even where a conviction is void, the Court added, " * * * its operation may be stayed by habeas corpus only through the exercise of the authority of the court to remove the prisoner from custody." McNally v. Hill, supra, at 139, 55 S.Ct. at 27. Nevertheless, the language found in several subsequent opinions appears to have eroded the doctrinaire conception of habeas corpus expressed in McNally. See, Rowe v. Peyton, 383 F.2d 709 (4th Cir. Sept. 26, 1967).

Indications of a possible shift appear in Parker v. Ellis, 362 U.S. 574, 80 S.Ct. 909, 4 L.Ed.2d 963 (1960), wherein four justices were prepared to issue a writ even though the petitioner had already served his sentence and had been released from prison. Writing for the dissenters, Chief Justice Warren contended that while a writ of habeas corpus will not issue unless the applicant is "in custody", the Habeas Corpus Act, 28 U.S.C. § 2241 (1964), as amended, 80 Stat. 811

(1966), gives the federal courts broad authority to dispose of the matter as law and justice require. It is in keeping with both the spirit of the Great Writ and the statutory mandate, the Chief Justice argued, for a court to issue a writ where there has been an intolerable delay in affording justice, and no other remedy is realistically available. Parker v. Ellis, supra at 583–584, 80 S.Ct. at 915–916 (dissenting opinion).

The causes, to be sure, have changed with the times. Instead of the arbitrariness of judges, Parker has had to contend with the time consuming nature of our system of appellate review and collateral attack. We cannot expect history to tell us exactly how to cope with this problem, because it simply did not exist in the early days of the common-law writ, when there was little if any appellate review of the then relatively simple habeas corpus proceedings. But history does provide general guidance. This guidance is incompatible with the idea that the writ designed as an effective agent of justice has become fossilized so that old problems, once thought to have been solved, are now insurmountable because they have taken slightly new forms. The Court has not hesitated to expand the scope of habeas corpus far beyond its traditional inquiry into matters of technical "jurisdiction." The statute permitted this adaptation in the interests of "law and justice," and the Court has responded to the demands of that compelling standard.

Parker v. Ellis, supra at 585, 80 S.Ct. 915–916 (dissenting opinion).

Similarly, the present procedural problem had no immediate urgency until habeas corpus not only was freed from its traditional technical procedural limitations but also was extended to state court proceedings. Perhaps more importantly, however, the conceptual changes regarding the availability of the Great Writ have been accompanied by an expansive reinterpretation of our fundamental con-

stitutional freedoms. See, Rowe v. Peyton, supra.

Moreover, the institution of parole has undergone significant transformations as well. Indeed, the frequency of parole has increased to the point where approximately fifty percent of all prisoners receive such relief. Note, Habeas Corpus and the Prematurity Rule, 66 Colum.L. Rev. 1164, 1173 (1966). In view of such altered circumstances, a repudiation of *McNally's* unrealistic and inequitable rule would represent a perceptive recognition of the modern evolution of criminal justice. See, Note, 66 Colum.L.Rev., supra at 1177; Note, 65 Mich.L.Rev. 172, 179 (1966); Recent Decisions, 52 Va.L. Rev. 129, 134 (1966).

Several decisions subsequent to Parker v. Ellis, supra, attest to the growing impact of the reasoning which underlay the dissents in that case. For example, in Fay v. Noia, 372 U.S. 391, 441, 83 S.Ct. 822, 850, 9 L.Ed.2d 837 (1963), the Court, recognizing habeas corpus as the ultimate remedy for anomalous situations affronting the conscience of a civilized society, declared that

> \* \* \* [a]lthough in form the Great Writ is simply a mode of procedure, its history is inextricably intertwined with the growth of fundamental rights of personal liberty. For its function has been to provide a *prompt and efficacious remedy for whatever society deems to be intolerable restraints.*

Fay v. Noia, supra at 401–402, 83 S.Ct. at 828–829. (Emphasis added). Speaking in broad terms, the Court equated "custody," the predicate for habeas corpus relief, with the restraint of liberty. Fay v. Noia, supra at 427, 83 S.Ct. at 842.

Further liberalization in the interpretation of the Habeas Corpus Act can be seen in Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), wherein the Court held that a person on parole is "in custody" within the meaning of the statute. The Court asserted that there are restraints other than physical imprisonment which are not shared by the public generally and which are sufficient to support the issuance of a writ of habeas corpus. Jones v. Cunningham, supra at 240, 83 S.Ct. at 376. In addition, the Court seemed to be saying that the custody requirement is the sole limitation upon the issuance of a writ and, thus, appeared to leave the door ajar for the fashioning of remedies designed to meet the exigencies of the particular restraint of liberty at issue.

> [W]hile limiting its availability to those "in custody," the statute does not attempt to mark the boundaries of "custody" *nor in any way other than by use of that word attempt to limit the situations in which the writ can be used.*

Jones v. Cunningham, supra at 238, 83 S.Ct. at 374–375. (Emphasis added).

In light of the progressive expansion of the scope of the writ of habeas corpus, this court must agree with the Fourth Circuit that " \* \* \* there is reasonable ground for thinking that were the Supreme Court faced with the issue today, it might well reconsider McNally and hold that a denial of eligibility for parole is a 'restraint of liberty' no less substantial than the technical restraint of parole." Martin v. Commonwealth of Virginia, 349 F.2d 781, 783–784 (4th Cir. 1965). Accord: Ganger v. Peyton, 379 F.2d 709 (4th Cir. 1967); Williams v. Peyton, 372 F.2d 216, 217 (4th Cir. 1967); Johnson v. Avery, 252 F.Supp. 783 (N.D.Tenn.1966); Commonwealth ex rel. Stevens v. Meyers, 419 Pa. 1, 213 A.2d 613 (1965). But see, Arketa v. Wilson, 373 F.2d 582, 585 (9th Cir. 1967). As Justice Black has remarked,

> [the writ of habeas corpus] is not now and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose— the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty.

Jones v. Cunningham, supra 371 U.S. at 243, 83 S.Ct. at 377.

Moreover, as a practical matter, the interests of both the prisoner and the state are better served by enabling Mr. Burke to seek a writ, since the earlier these matters can be submitted for determination, the greater the likelihood that the truth can be established. See, Rowe v. Peyton, supra.

Accordingly, this court proceeds to the merits of the petition. See, Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830 (1941). Unfortunately, the state has chosen not to inform this court of its views on the merits of the petitioner's claim. Hopefully Judge Kaufman's recent remarks concerning such tactics will have a salutary effect. See, United States ex rel. Rogers v. Warden, 381 F.2d 209, 222 (2d Cir. 1967).

### Voluntariness of the Plea

■■ Generally, a plea of guilty effects " * * * a waiver of all non-jurisdictional defects in any prior stage of the proceedings * * *," United States ex rel. Glenn v. McMann, 349 F.2d 1018, 1019 (2d Cir. 1965), cert. denied, 383 U.S. 915, 86 S.Ct. 906, 15 L.Ed.2d 669, but if it is made involuntarily, the defendant's fourteenth amendment rights have been violated and the plea is void. More specifically, if a plea " * * * is prompted by fear that unconstitutionally obtained evidence will be used at trial * * * ", United States ex rel. Vaughn v. LaVallee,[8] 318 F.2d 499 (2d Cir.

1963), the defendant's conviction cannot stand. See generally, Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126 (1956); Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927); Doran v. Wilson, 369 F.2d 505 (9th Cir. 1966); United States v. Adelman, 107 F.2d 497 (2d Cir. 1939); People v. Spitaleri, 9 N.Y.2d 168, 173 N.E.2d 35, 212 N.Y.S. 2d 53 (1961).

### Hearing Ordered

■■ Where a petition for a writ of habeas corpus contains "factual allegations not patently frivolous or false on a consideration of the whole record * * *," summary dismissal is improper. Commonwealth of Pennsylvania ex rel. Herman v. Claudy, supra 350 U.S. at 118–119, 76 S.Ct. at 224–225. Cf., United States ex rel. Marinacco v. Fay, 336 F.2d 272 (2d Cir. 1964).[9] Since the petitioner in this case was denied a hearing in the state court, he is entitled to such an opportunity before this court reaches a decision on the issues raised by his petition. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); United States ex rel. McGrath v. LaVallee, 319 F.2d 308, 312 (2d Cir. 1963).

The matter will be placed upon the civil calendar as soon as either the petitioner or his counsel advises the court as to a convenient date. The petition is referred to the trial judge for determination, and it is

So ordered.

---

8. The court of appeals affirmed the dismissal of the petition, however, on the ground that the charge of coercion was purely conclusory, unsupported by sufficient factual allegations to make out a violation of the prisoner's constitutional rights.

9. 336 F.2d at 274:
   He alleges that he was young in years and that a confession was taken from him while he was hospitalized and evidently under sedation, some four months before he entered the guilty plea while represented by retained counsel. But the petition contains no allegation that the confession was improperly obtained or that his later plea was even remotely connected therewith. * * * Before a hearing is called for, constitutionally significant facts must be set forth.