**Carl Allen McCLURE, Jr., Appellant,**

**v.**

**STATE of Missouri, Respondent.**

**No. 55707.**

Supreme Court of Missouri,
Division No. 1.

June 28, 1971.

Motion for Rehearing or to Transfer to
Court En Banc Denied
Sept. 13, 1971.

Paul E. Panek, Belton, for appellant.

John C. Danforth, Atty. Gen., E. Thomas Coleman, Jr., Asst. Atty. Gen., Kansas City, for respondent.

HIGGINS, Commissioner.

Appeal from denial, after evidentiary hearing, of motion under Criminal Rule

27.26, V.A.M.R., to vacate and set aside judgment of conviction and sentence to life imprisonment entered upon plea of guilty to charge of murder, first degree, Sections 559.010 and 559.030, V.A.M.S.

On April 30, 1962, Carl Allen McClure, Jr., born October 7, 1946, lived on a farm near Pleasant Hill, Cass County, Missouri, with his father, Carl Allen McClure, Sr., and his stepmother, Virginia. In the late afternoon that date, Virginia was found in the bathroom of the home, dead from a .38 caliber bullet wound in her head. At approximately 1:00 a.m., May 1, 1962, Carl, Jr., was arrested by police in Paola, Kansas, while seeking gasoline for his family's Volkswagen automobile. He was held for the sheriff of Cass County, Jack McComas, who arrived about 5:30 a.m., and took Carl, Jr., to the jail office in Harrisonville, Missouri. A few hours later the sheriff interrogated Carl, Jr., and about 9:10 a.m., he confessed the killing to the sheriff and juvenile officer, Everett Wade. Later in the morning a statement was taken from Carl, Jr., by A. J. Anderson, prosecuting attorney, which was later typed and signed by Carl, Jr.

He was placed in the Cass County jail and descriptive arrest report, pictures, and fingerprints were taken. Mr. John C. Pohlman was employed by Carl, Sr., to counsel with and act for his son. On May 11, 1962, a hearing was held in the interest of Carl, Jr., in the juvenile court of Cass County, with Carl, Jr., his father, and his lawyer present. Carl, Jr., was already under jurisdiction of the juvenile court on account of a prior unlawful use of an automobile; and, at the conclusion of the hearing, the juvenile court ordered its juvenile proceedings dismissed to permit prosecution of Carl, Jr., under the general law for the general reason he was not a proper subject to be dealt with under the juvenile law.

On May 14, 1962, an information was filed in the Circuit Court of Cass County, charging Carl, Jr., with murder, first degree, of his stepmother, Virginia.

On July 30, 1962, Carl, Jr., with his lawyer, entered a plea of guilty to the charge, after which the circuit judge, the Honorable William M. Kimberlin, sentenced him to life imprisonment.

The evidentiary hearing on the motion was accorded January 23, 1970, and the court, the Honorable David J. Dixon, at the conclusion of the hearing, and in denial of the motion, made detailed findings of fact and conclusions of law:

"* * * that the movant was fifteen years of age at the time of the alleged offense, that on April 31 [30], 1962, he was a juvenile; that on May 1st, the Sheriff of Cass County, Missouri, together with the juvenile's father, went to Paola, Kansas, where the juvenile was being held by local authorities because of a report of the alleged crime, that the juvenile was returned to Cass County, Missouri, by his father and the Sheriff of Cass County, Missouri, and was taken to the Sheriff's Office in the Cass County Jail, that all of the foregoing occurred in the very early morning hours of May 1st; that the juvenile officer arrived at the Cass County Jail at approximately 8:00 a.m., on May 1st, and interviewed movant, that no interrogation of movant was made by the Sheriff of Cass County, Missouri, prior to the Juvenile Officer having interviewed him, that the movant was never confined in the Cass County Jail, but was held in the Juvenile quarters, Cass County, Missouri, during his custody by the Juvenile Officer and the Juvenile Court, that the Juvenile Judge of Cass County, Missouri, gave permission to the Prosecuting Attorney and the Juvenile Officer to interrogate the movant in the presence of the Official Court Reporter of the 17th Judicial Circuit; that a verbatim transcript of such interrogation was made; that such interrogation was made after the movant's constitutional rights had been fully and carefully explained to him. That thereafter, the Sheriff of Cass County, Missouri took fingerprints and pictures of the movant after first having obtained the consent of the Juvenile Judge, that on May

11, 1962, in the Juvenile Court of Cass County, Missouri, the movant was transferred from the Juvenile Court to the Circuit Court of Cass County, Missouri, to be treated as an adult. That said transfer was made after a full and complete hearing on a petition filed by the Juvenile Officer, and after a finding by the Juvenile Judge that the alleged offense and other circumstances of the case were such that the interest of justice would be better served by trying the movant under the general law, rather than in the Juvenile Court, that approximately two months prior to such hearing the juvenile had been taken under jurisdiction of the Juvenile Court by reason of the prior offense of car theft committed by said juvenile and the Juvenile Court had been fully advised of the character, background, environment and associations of said juvenile at such prior hearing, that movant was represented at the Juvenile Hearing by competent counsel, Mr. John Pohlman of Kansas City, and that his rights in connection with the Juvenile Code were fully and completely observed, that said counsel had a wide and varied experience in the defense of criminal cases, that the hearing in Juvenile Court was consistant with the standards of due process and that no rights of the movant were denied at that time, that prior to the hearing in the Juvenile Court, the movant was represented by such counsel of his own choice, that he was fully and completely advised of his constitutional rights, the nature and character of the offense with which he was charged, the nature and character of the evidence against him, and the range of punishment provided by the Statute for the offense charged. That movant freely and voluntarily made a confession to the Juvenile Officer prior to anyone else ever interrogating him, and then subsequently freely and voluntarily made a verbatim statement confessing the crime charged, in the presence of the Juvenile Officer, the Prosecuting Attorney and the Official Court Reporter of the 17th Judicial Circuit, that movant was of sound mind, and understanding at the time of giving of said statements, of his appearances in the Juvenile Court, and subsequently in the Circuit Court, that there are no facts indicating any incompetency or any defect by reason of age or emotional involv[e]ment which would have prejudiced movant's rights in any of the proceedings in this cause, that his chosen counsel conferred with movant on at least five or six occasions, properly advised him of his rights and effectively represented movant, considering the severity of the offense and conclusiveness of the evidence, and the peculiar facts relating to the offense, that movant appeared after the filing of a[n] information charging him with First Degree Murder, before the Honorable William M. Kimberlin, Judge of the Circuit Court of Cass County, Missouri, on July 30, 1962, that said hearing, for the purpose of receiving a plea of guilty from the movant, had been delayed at the request of the Circuit Judge, even though earlier sought by counsel for the movant, so that the movant would have all necessary opportunity to make a decision as to his plea on such appearance; that the Circuit Judge scrupulously observed the requirements of the law with respect to informing the movant of the nature of the charge, his constitutional right of trial by jury, the range of punishment afforded by the Statute, and the voluntary nature of his appearance and plea before the Court, that upon such inquiry by the Court, the defendant freely and voluntarily entered a plea of Guilty to a charge of First Degree Murder; and the Court, which would have been justified in the imposition of the extreme penalty, sentenced the movant to the least penalty afforded by the Statute for the charge to which he pleaded guilty, that none of the allegation[s] in movant's First Amended Petition and Motion to Vacate, Set Aside or Correct Conviction and Sentence, nor in the original Motion filed pro se, and styled 'Motion', together with the typewritten ad[d]endum thereto, are supported by any substantial evidence.

"The Court further finds that movant's rights under the Juvenile Code, Chapter 211, were fully and completely preserved by the Juvenile Judge, that there was no violation of Section 211.151, or Section 211.171, or Section 211.401, or Section 211.061, or Section 211.071, as alleged and set forth in movant's First Amended Petition and Motion to Vacate. That Movant was afforded due process; that his confessions and statements were voluntarily made and with full knowledge of his constitutional rights with respect to said statements, and that his constitutional rights under the 4th and 5th Amendments of the United States Constitution, and the comparable sections of the Constitution of the State of Missouri, were not violated. That movant had a full, fair and complete hearing before the Juvenile Court and the Circuit Court upon his plea, and that the rights of the defendant were fully and carefully preserved by the Circuit Judge at those times, that his punishment as assessed by the Circuit Judge upon his voluntary plea of guilty was within the range of punishment permitted by the Statute, and was not excessive nor harsh under all the facts and circumstances."

 These findings and conclusions of the trial court are presumptively correct; they are not to be set aside unless clearly erroneous; they are clearly erroneous only if upon the record the reviewing court has a definite and firm conviction that a mistake has been made, and the burden of proving grounds for relief is on the movant. Crosswhite v. State, Mo., 426 S.W.2d 67, 70–71[1]; Burgess v. State, Mo., 466 S.W.2d 67.

Appellant's charges of error in connection with the court's findings are limited to two contentions:

I. That his plea was involuntary due to "mental coercion," and "being obtained subsequent to a totality of circumstances * * * which * * * resulted in being a patent denial of due process"; and

II. That movant was "misled by counsel" and, as a result, movant was denied due process "in that movant involuntarily entered a plea of guilty."

The argument under Point I asserts certain procedural deficiencies such as absence of extradition proceedings, interrogation of a juvenile by the sheriff, interrogation without presence of counsel, interrogation by the prosecuting attorney, taking of pictures and fingerprints, and confinement prior to being taken to juvenile court, all allegedly in violation of his rights under the Juvenile Code, Chapter 211, V.A. M.S.; State v. Arbeiter, Mo., 408 S.W.2d 26; State v. Smith, 357 Mo. 467, 209 S.W. 2d 138; State v. Shaw, 93 Ariz. 40, 378 P. 2d 487. He emphasizes also the "high standard of proof" for the waiver of his rights as applied to in-custody interrogation. See Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; Haynes v. Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513; Haley v. Ohio, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224.

The argument under Point II asserts that movant told Mr. Pohlman of the two confessions and that he believed himself to be of unsound mind; that the attorney said he "did not want to hear" of any sanity problem, told movant the state would use the confessions which would lead to the death penalty, and that if movant would plead guilty the attorney could get him a life sentence. By reason of these allegations, appellant contends he was coerced to plead guilty by fear of use of his confessions, Commonwealth of Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 76 S. Ct. 223, 100 L.Ed. 126; United States ex rel. Vaughn v. LaVallee, 318 F.2d 499; United States ex rel. Burke v. Mancusi, 276 F.Supp. 148; that his plea was a result of mental coercion, Ashcraft v. Tennessee, 322 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192; Chambers v. Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716; Lynumn v. Illinois, 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922; Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473; State v. Wil-

liams, Mo., 361 S.W.2d 772; State v. Dale, Mo., 222 S.W. 763; that his lawyer was ineffective for failure to investigate movant's sanity, Jones v. Cunningham, 4 Cir., 313 F.2d 347; and that he was misled by his attorney, State v. Rose, Mo., 440 S.W. 2d 441; M.L.R. Vol. 36, No. 1, p. 139.

The difficulty with appellant's contentions and his allegedly supporting assertions and authorities is that the record supports all the findings of the trial court, and particularly the trial court's denial of the briefed contentions.

Movant's version of the facts is that his father wanted him to do farm work rather than to participate in school activities and that his father "beat" him frequently. When taken into custody in Paola, Kansas, May 1, 1962, he was placed in jail and questioned until Sheriff McComas came. At 5:30 a.m., Sheriff McComas took him to the Cass County jail. The sheriff put him in jail without food and then interrogated him. Later, Mr. Wade, the juvenile officer, came in. He confessed the crime to the sheriff and "a trustee wrote it down." He also admitted the crime to Mr. Wade, and then he was taken to the office of the prosecuting attorney where he gave a statement to Mr. Anderson, the prosecuting attorney, in the presence of a court reporter and clerk. He was not advised of his rights or that he was entitled to a lawyer.

He first saw his attorney, Mr. Pohlman, a few days before he went to court. Mr. Pohlman had been employed by his father. He saw him only two or three times about thirty minutes each time. Mr. Pohlman never asked the circumstances surrounding the crime and he said that with the confessions and evidence he would have no chance in front of a jury, and that a jury would give the death penalty. Mr. Pohlman did nothing in his behalf at the juvenile court hearing. Following the juvenile court hearing, Mr. Pohlman again said he would not have a chance before a jury.

His fingerprints and photograph were taken at the jail between the juvenile court and circuit court proceedings.

On cross-examination, movant admitted a number of discrepancies between his testimony and the allegations of his motion. He admitted that he was never beaten, offered any deals, coerced or induced in any way to confess. He confessed voluntarily and the written confessions were accurate. Although the statement recited advice as to constitutional rights, he denied having been so advised; and although his presence was denied, the body of the statement given to the prosecuting attorney shows it was given in the presence of the juvenile officer. Similarly, the statement given earlier the same morning shows it was given to Sheriff McComas and the juvenile officer. He admitted that his motion was framed and his testimony suggested in part by penitentiary inmates. He acknowledged that he admitted the crime to Mr. Pohlman; that he suggested no defense to Mr. Pohlman, and that his suggestion of seeing a psychiatrist was "not to plead temporary insanity, but to find out if there was anything wrong with me; not for the benefit of my case, but for the benefit of me." He knew of no defense—"Alls I knew was that at the time I felt that I did it and I should pay for it." He still felt the same way at the hearing. He also acknowledged that when he pleaded guilty he knew the two possible sentences.

Movant also entered into evidence the transcript of the juvenile court proceeding from which it appears that Mr. Wade, the juvenile officer, first heard of the murder by radio. He called Sheriff McComas and went to his office where he admitted his guilt to him and the sheriff. He reported all such matters to the juvenile court, Judge Kimberlin, and gave Carl a chance to explain all the circumstances in the presence of the prosecuting attorney. He recited these circumstances and his own view of other evidence in the juvenile

court proceeding as well as to remind the court of the existing supervision by the juvenile court in connection with automobile theft.

Judge Kimberlin stated that on May 1, 1962, he was informed by the juvenile officer that Carl Allen McClure, Jr., then under jurisdiction of the juvenile court, allegedly had committed a murder and he ordered the juvenile officer to place him in custody in juvenile quarters at the county jail. He later conducted the hearing and, after receiving a report from the juvenile officer and considering prior jurisdiction, substance of alleged crime, publicity, and other matters, dismissed juvenile proceedings to permit prosecution of Carl, Jr., as an adult. Judge Kimberlin's practice at the time movant was arrested was to permit photographs, fingerprints, and statements to be taken on oral order. He was unable to recall specific permission in this case.

Judge Kimberlin also presided over the circuit court when movant pleaded guilty. There was no formal arraignment as such because a plea of guilty was being entered, and if waiver of arraignment was not specified, he considered it waived by the plea. When movant pleaded guilty, Judge Kimberlin had no reason to question movant's mental competence or understanding of the proceedings, and he was represented by "one of the most competent criminal trial lawyers in the area."

A. J. Anderson, the prosecuting attorney who participated in questioning movant, talked with movant only after he had talked with the juvenile officer and in his presence. In addition to the confession, the state had evidence by way of fingerprints, ballistics, photographs, and oral statements to people "that he had committed the crime." The state was prepared to go to trial. There was no indication of a need for psychiatric treatment. The statement was signed by movant before a notary public a day or so after it was given and typed. Mr. Pohlman discussed the case with him numerous times, and on two

or three occasions, Mr. Pohlman was accompanied by another well-known attorney, Bill Costello, now deceased. They actively investigated the case, including a review of the prosecuting attorney's file which he opened to them. Mr. Anderson never considered any recommendation less than life imprisonment, and he had no belief the crime occurred in passion or under power of any mental condition. He had authority from the juvenile officer to question movant who was brought to his office by the juvenile officer. With respect to rights, he "told the boy he didn't have to say anything; that he had a right to have an attorney; that he didn't have to make any statements, and I dictated that into the record. * * * he knew exactly what he was doing."

Everett Wade at the time of the hearing had been juvenile officer of Cass County for thirteen years. His first association with Carl Allen McClure, Jr., was when he was adjudged to be in need of care and treatment for automobile theft. He made an investigation of the home, family, school, and nature of the boy at that time.

The first interrogation of movant, May 1, 1962, was in the jail office. He took a statement from movant; Sheriff McComas came in and witnessed it. He considered movant to be in his custody, care and control, and he evidenced no mental or physical illness. He was present with movant when he was questioned by the prosecuting attorney. He never complained of his treatment while in custody. In permitting the prosecuting attorney to question movant, he had permission of Juvenile Court Judge Kimberlin.

Sheriff McComas went to Paola, Kansas, early May 1, 1962, to bring movant back to Cass County. He had no warrant but was accompanied by the boy's father, Carl McClure, Sr. He did not interrogate the boy during the return. He placed him in the office of the jail until the juvenile officer arrived. He witnessed a short statement given to the juvenile officer by movant. He photographed and finger-

printed movant on verbal authority of Juvenile Court Judge Kimberlin. He was present, along with the juvenile officer, when movant gave the statement to the prosecuting attorney which was later typed and ultimately signed by movant before a notary public. Sheriff McComas observed the movant while in custody and he appeared normal and not frightened, upset or unstable. He saw Mr. Pohlman visit movant five or six times for forty-five minutes or so each visit. Sheriff McComas collected evidence of the crime, such as guns, bullets, ballistic tests, pictures, fingerprints, and bloodstained shoes belonging to movant. He knew of no time when movant complained of being hungry or mistreated.

John C. Pohlman was admitted to practice law June, 1924. He was a general practitioner with considerable experience in criminal cases. He first saw Carl Allen McClure, Jr., at the sheriff's office in Harrisonville "in response to a call from Carl's father." He talked first with Sheriff McComas and then with the boy. He also appeared with him in juvenile court as well as at the later plea proceedings in circuit court. At the first meeting there was no mention of confessions or question of soundness of mind. He readily told the lawyer what had happened, including how he killed his stepmother and of his trip to Paola and return. He never protested innocence or denied the crime. He offered no defense. "The only thing he said to me was, that might have been a defense to him, but from a legal standpoint, I sure didn't consider it as such, that he didn't like his step-mother." He made no preparation for trial because, after seeing the state's evidence and discussing it with the prosecutor, his opinion was that it was not a case for trial. He based his opinion on the facts and evidence in the hands of the sheriff and prosecuting attorney and his own investigation. The boy's prior record seemed to be "strictly normal," and he had no reason to suspect him to be of unsound mind.

"I gave him the same advice then that I would give him today under the same circumstances. As I say, after I investigated the evidence that the State had, which in my opinion was conclusive, I told the boy's father that I didn't think it was a case for trial and I didn't want to try it as such, that in my opinion the boy would fare better by pleading guilty. In first degree murder there were two things that could happen to him; one was life, and one was death, and I was not too well acquainted with Judge Kimberlin in those days, but I didn't feel that a young judge would send anybody to the gas chamber. I also told his father that I didn't see any reason to gamble with a jury, and that if he wanted somebody to try the case, I didn't want to try it. The case had received wide publicity all over this part of the country and, in fact, all over the state I imagine, at least I heard from as far as St. Louis, so I didn't figure a change of venue would accomplish anything, and with the state of facts as they existed, I didn't think a change of venue could do any good anyhow. In my opinion there was no defense that could be made in the case. * * * I don't think I had any knowledge of two confessions. I learned of the confession that the prosecutor took on my second trip down there, but I never considered that either—if there were two, I never considered the one that I knew of as being of any value, because, as I say, in my opinion it was not a case for trial, and had it been for trial, I probably would have made some objections to the introduction of it, but I didn't give it any thought at all. * * * Because I told the boy's father after my first meeting with the boy what my opinion was in the case, and that was after Mr. McComas had shown me what he had later. The next trip down Anderson showed me what they had and I was more fully convinced than ever then it wasn't a case to try."

Mr. Pohlman conferred with movant personally at least five times. He recalled no request from his client with respect to a

psychiatrist and he said nothing about a defense of insanity. He did not discuss the statements with respect to provisions of the Juvenile Code "because in my opinion * * * I didn't consider it a case for trial and I knew that those confessions wouldn't be used." He did not do any research because it was not a case for trial. "I made no preparation for trial because I had no defense. * * * they have evidence that the boy was home the night before, he was gone the next morning, he was captured at Paola * * *; he had the family car * * * he had the revolver with him and in my experience I rather thought that made a pretty conclusive case." He explained the boy's rights to a jury trial and advised against it, and the boy never indicated a desire for jury trial. "He wanted to plead and get it over with." He tried to get the charge reduced to second degree murder on a basis of sympathy but was unsuccessful. If the case went to trial "there probably would have been some things get into the record that would indicate more than first degree murder [rape], and, as I say, I couldn't change my opinion on it. Even if it were today it would be the same thing. I still would advise a plea of guilty."

On July 30, 1962, movant was present in the Circuit Court of Cass County with his attorney, John C. Pohlman, and his father. The court read the information charging Carl Allen McClure, Jr., with murder, first degree, of his stepmother, Virginia McClure, by means of a gun, after which these proceedings transpired:

"Q How old are you, Mr. McClure? A 15. Q 15 years old? A Yes sir. Q And you recall that you were transferred from the Juvenile Division of the Circuit Court of Cass County, Missouri to the general court to be tried as an adult, you recall that, don't you? A Yes, sir.

"Q How far did you go in school? A Freshman in High School. Q A freshman in high school? A Yes sir.

"Q You have heard me read this information to you charging you with murder in the first degree? A Yes sir. Q You understand the nature of this charge, do you not? A Yes sir. Q You understand that you are charged with killing and murdering Virginia McClure on a certain date in Cass County, don't you? A Yes sir.

"Q Now you are appearing here today with your attorney, Mr. Pohlman, are you not? A Yes sir. Q And you have conferred at length with your attorney, Mr. Pohlman, in regard to your defense of this case? A Yes sir. Q You understand that you are entitled to a trial by jury if you desire one under the Constitution of the United States and the State of Missouri, you understand that, don't you? A Yes sir.

"Q Now has the range of punishment this charge carries been explained to you? A Yes sir. Q Do you understand under this charge that I have read to you that there are only two possible penalties that the Court can meet [sic] out? A Yes sir. Q One is death? A Yes sir. Q And the other is life imprisonment? A Yes sir.

"Q Well, after telling me you understand the nature of this charge, that you have conferred with your attorney as to any defense you might have in this case, and you know you are entitled to a trial by jury and you understand the range of punishment the charge carries, how at this time do you plead, guilty or not guilty? A Guilty. Q Are you pleading guilty voluntarily on your part? A Yes sir. Q You haven't been induced or influenced to plead guilty by anyone representing the State of Missouri, have you? A No sir. Q No officer of the State of Missouri has induced you in any way to enter a plea, is that correct? A That is correct. Q Are you pleading guilty solely for the reason you understand the nature of this charge, you know the acts you did and in

**556**

your opinion and the opinion of your attorney you are a guilty person? A Yes sir.

"Q Very well, under the facts and circumstances detailed and the answers given I am going to accept your plea of guilty."

Mr. Anderson then made a brief statement, after which Mr. Pohlman stated: " * * * this is one of the most impressing tasks I have ever had. I have spent a good deal of time with this boy, going over the facts with him and the statement he has made. He has indicated that he desires to plead guilty and when he enters that plea I have told him there are only two penalties possible. I have told him he is entitled to a trial by jury—I have informed him that he was entitled to that. This terrible thing has happened and this boy is ready to take his punishment now and he so indicated yesterday. This is in your hands and I feel you are capable of handling this case. This crime has been committed and I trust to God from here on out for this boy."

Mr. McClure was invited to speak and he declined, as did movant when asked if he had any reason why the court should not pronounce sentence.

■ The evidence has been stated in detail because it clearly demonstrates that movant pleaded guilty voluntarily with effective assistance of counsel. The statement is equally clear in demonstrating an absence of the asserted misleading of movant by counsel, mental coercion, and denial of due process.

The thrust of movant's testimony and argument with respect to the performance of his lawyer is that Mr. Pohlman advised him to plead guilty on account of the confessions and that he failed to investigate a defense of insanity.

It is not clear from movant's own testimony that he ever suggested a defense based on insanity. The most that can be said from it is that he wanted to see a psychiatrist to know about himself. And it is movant's testimony alone that gives any suggestion that Mr. Pohlman's advice to plead guilty was based on the existence of confessions.

Aside from appellant's argument, there is no suggestion of mental or physical illness upon which to base a defense or to question his understanding of all proceedings; and Mr. Pohlman's advice was shown to be a professional judgment based upon the evidence and lack of any defense. The discrepancies, if any, were for the court to resolve on credibility of the witnesses, Walster v. State, Mo., 438 S.W.2d 1; and on this record, it may not be said that the court erred in failing to find that movant's guilty plea was a product of coercion or misleading on the part of counsel.

Similarly, the record fails to show that Mr. Pohlman's assistance on behalf of movant was ineffective. The only other dispute between movant's testimony and that of Mr. Pohlman is on the number of interviews between the two. Irrespective of that difference (also for the court to resolve), the record shows that Mr. Pohlman had full knowledge of the state's case; that he knew that defendant had no defense, and made a judgment on the evidence that a guilty plea was the best and safest course for his client.

Coupled with the absence of coercion, misleading and otherwise ineffective assistance of counsel, is the record of the plea proceedings. Such record shows that movant pleaded guilty voluntarily because of his guilt and absence of any defense; that he was advised of his rights; that he was not coerced, misled, or induced in any way to plead guilty; and that he understood the proceedings and the extent of punishment.

■ In further answer to movant's arguments, assume, arguendo, that movant's confessions would not have been admissible at trial. Appellant nevertheless cannot prevail since the record establishes that his plea was in fact voluntary and entered with the assistance of competent counsel.

Reed v. Henderson, 6 Cir., 385 F.2d 995; Busby v. Holman, 5 Cir., 356 F.2d 75; Maxwell v. State, Mo., 459 S.W.2d 388; McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763.

Similarly, in further answer to movant's arguments, assume, arguendo, that he was denied due process in his removal from Kansas and in his interrogations as a juvenile. His voluntary plea of guilty waived such procedural defects, if any, in the proceedings preliminary to the plea. Gallegos v. Cox, 10 Cir., 358 F.2d 703; Salazar v. Rodriguez, 10 Cir., 371 F.2d 726; Busby v. Holman, supra; Hamby v. State, Mo., 454 S.W.2d 894.

Judgment affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.