Sterling Willis YOUNG, Appellant,

v.

STATE of Missouri, Respondent.

No. 53965.

Supreme Court of Missouri,

Division No. 2.

March 10, 1969.

Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, for appellant.

John C. Danforth, Atty. Gen., Gene E. Voigts, Asst. Atty. Gen., Jefferson City, for respondent.

STOCKARD, Commissioner.

On January 7, 1959, Sterling Willis Young appeared in the Circuit Court of the City of St. Louis with employed counsel, and by leave of court withdrew his former pleas of not guilty to three separate charges of rape and one charge of burglary in the first degree, and entered pleas of guilty. He was sentenced to life imprisonment in each of the rape cases, and to imprisonment for ten years in the burglary case.

With the aid of appointed counsel defendant has now filed under Supreme Court Rule 27.26, V.A.M.R., a separate motion to vacate the judgment in each case. By agreement of the parties the four motions were "heard, considered and ruled collectively and together, and not individually." The trial court denied each of the motions after making findings of fact and conclusions of law, and defendant has appealed. We affirm.

Defendant previously filed two motions pursuant to Supreme Court Rule 27.26, each applicable to the four judgments, one of which was appealed to this court, State v. Young, Mo., 351 S.W.2d 732, and in which his only contention was that the "material evidence" presented to the grand jury consisted of statements and admissions of his guilt which were unlawfully obtained by police officers. The adverse ruling on the other motion was not appealed.

In the pending motion it is alleged that the pleas of guilty were involuntary because (a) when defendant was taken into custody on August 16, 1958 he was held for a total of sixteen days during which period he was "charged with rape and burglary and was not promptly advised of his right to counsel, nor was counsel present during extended interrogation which was conducted under threatening and at times violent circumstances"; (b) his "request for counsel was denied"; (c) he was "exposed to one-man lineups and improper identification procedures"; (d) he "signed an alleged confession which be believed could be used against him, although the confession was in fact incompetent and subject to suppression"; (e) he was subjected to a mental examination which he did not understand and which he believed produced information which might be used against him; (f) he was repeatedly told by his counsel that "the jury could give him the death penalty, and that several charges were pending so that the prosecution might have several chances of giving him the death penalty"; and (g) he lacked confidence in his counsel and desired to discharge him, but the court rejected his request.

Defendant testified at the hearing on his motion. We shall set forth in narrative form the substance of his testimony.

After defendant was arrested he was questioned by the police about some robberies and a murder but not about "this crime," and later he was placed in a "show-up" five or six times. An officer came "with a warrant" and he was then questioned about some burglaries and some rapes. After four or five days he signed a confession which he did not read. During the time he was being questioned he did not see a lawyer or his family, and the police beat him but they did not say why.

Defendant's lawyer, who had been employed by his mother, wanted him to go to the hospital and take a truth serum test concerning a murder. He was taken to the hospital, administered truth serum, and after about a month he was returned to jail. His lawyer told him that he had talked to the judge, and that the judge wanted to give him life, and that his lawyer also told him that if he did not plead guilty he would get the gas chamber. On January 6, 1959, defendant was taken before Judge Regan (then a judge of the Circuit Court of the City of St. Louis, and now a judge of the United States District Court). Defendant's mother was present, and his lawyer stated that he wanted to enter a plea of guilty for defendant, but defendant told the judge that he did not want to plead guilty. Later, defendant was taken into Judge Regan's chambers, where, in the words of defendant, the following occurred: "Judge Regan asked me had I been listening to any jailhouse lawyers and I told him I wasn't, and he said, 'Well, your attorney here told me that you wanted to discharge him,' and I said, 'I did.' And he asked me why and I told him that he wasn't trying to help me. So Judge Regan told me, and he said, 'I'm tired of fooling around with this case and you either take this lawyer or you are going to trial without one, and if you do I am going to see that you get the gas chamber.' [He] said there would be some people on the jury from Southeast Missouri and that's what they asked for. * * * He told me to go back to the city jail and think about it." After defendant had been returned to jail, his lawyer came and gave him "some papers with questions on them" and read them over to him and told him how to answer them. The following day defendant was returned to court. His mother was there and she told defendant that his lawyer had told her that he would get the death penalty if he did not plead guilty. He then entered the pleas of guilty because "that was the only thing I could do."

The above recital by defendant as to what occurred at the time he entered his pleas of guilty is not consistent with what is shown by the record and the other testimony.

Defendant was represented by two lawyers who had been retained by his mother. Each was experienced in trial work. Both testified at the hearing on the motion that at no time during the time they were representing him had defendant expressed dissatisfaction with their services. Judge Regan testified that he had no knowledge or recollection that defendant had expressed to him any dissatisfaction.

Mr. Baris, one of defendant's lawyers testified that on several occasions he conferred with defendant at the jail, and that he had taken the deposition of the prosecuting witness in one of the rape cases. He asked that defendant be examined at the hospital to determine if the defense of insanity was available, and he discussed this procedure with defendant and explained to him the purpose. He did not tell defendant that the purpose of his hospitalization was so he could be given a truth serum concerning a murder charge. However, while defendant was at the hospital a social worker assigned to defendant's case told Mr. Baris that the doctor wanted to give defendant sodium amytol, which she explained was harmless and acted as a relaxant, because they "were not getting complete communication" from him. The report of the hospital was that defendant was not insane, and Mr. Baris discussed the report with defendant and members of his family. He also discussed with defendant the admissibility of his confession, the facts and background of the cases, the recommendation of the State as to punishment in the event of defendant pleading guilty, and the question of his guilt and innocence. After these discussions defendant indicated to Mr. Baris that he wanted to plead guilty. Mr. Baris also stated that when defendant was taken before the court on January 6, 1959, the

prosecutor was asked to detail the facts and circumstances of the charges. After he had done so, the court asked the defendant if he "had done these things," and the defendant said "No." The court then stated that it would not accept the pleas of guilty. Mr. Baris then talked to defendant and found that he was confused and did not understand the court's question. When counsel reported this, the court stated that it would not accept the pleas of guilty that day "but would continue the case to the following day so that defendant could think about the matter." Mr. Baris testified that he had no recollection of a conversation between defendant and Judge Regan. The following day defendant was again brought before the court, and when he stated that he desired to plead guilty the court directed that a record be made. Mr. Baris examined defendant, and this examination shows that not only did the defendant understand the nature of the charges against him, he also identified the localities in the City of St. Louis where, and the approximate dates on which he had committed the several offenses with which he was charged. He specifically stated that there had been no promises made to him that if he "told these things" anything would happen to him, and he stated that it was his intention to plead guilty to the four offenses.

At the conclusion of the hearing on the motion, the trial court found that defendant was represented by two attorneys, each of whom command an excellent reputation for ability and competence, and that they exercised extreme diligence in their representation; that defendant was sent to the hospital so counsel could determine whether a defense based on mental condition was available, and for no other purpose; that defendant was fully informed of the nature of charges against him and that he entered the pleas of guilty voluntarily; that defendant's recital concerning the action of the police was "far from being compelling" and it did not bear upon his voluntary admission of guilt made in open court; and

that defendant was not subject to duress or compulsion while in court.

Defendant may not by reason of Supreme Court Rule 27.25, V.A.M.R., withdraw his plea of guilty after sentence as a matter of right. State v. Skaggs, Mo., 248 S.W.2d 635. The procedure provided by the rule is available only to correct manifest injustice, State v. Parker, Mo., 413 S. W.2d 489, 494, and defendant has the burden of establishing his grounds for relief by a preponderance of the evidence. State v. Mountjoy, Mo., 420 S.W.2d 316, 323. On appeal the review is limited to a determination of whether the findings, conclusions and judgment of the trial court are clearly erroneous. Crosswhite v. State, Mo., 426 S.W.2d 67, 70.

The substance of appellant's contention is that his pleas were not voluntary because (a) he believed that a confession would be used against him, but he does not contend that the confession was not true; (b) he believed he had been injected with a truth serum concerning a murder with which he was not charged; (c) he had been subjected to "show-ups;" (d) his mother and lawyer urged him to plead guilty, and (e) he had been unable to discharge his counsel. Although by his testimony, if believed, he made a serious indictment of the circuit judge who accepted his plea, we note that this circumstance is not relied on in the argument portion of defendant's brief. At the hearing on the motion Judge Regan testified out of turn and before the defendant so that he could return to his court. However, Mr. Baris had no recollection of any such conversation between defendant and Judge Regan, and the facts testified to by Mr. Baris are inconsistent with such a conversation occurring. The testimony of defendant did not impress the judge who heard the evidence on the motion, and it does not impress us in view of the testimony of Mr. Baris and the transcribed testimony of defendant at the time when the pleas of guilty were accepted.

Defendant was charged with three offenses for which the death penalty was authorized. His attorney would have been derelict in his duty not to have so advised defendant and counseled him in respect to the probabilities of the punishment. Defendant's testimony concerning the administration of truth serum is not convincing. The trial court's finding that his hospitalization was to determine whether a defense was available based on mentality was supported by the evidence and not clearly erroneous. The "show-ups" pertained only to identification, and defendant admitted on the stand that he was the person who committed the crimes to which he admitted guilt. Also, we find no merit to defendant's contention concerning the confessions. Defendant does not now deny his guilt, and he admitted his guilt when he entered his pleas. His lawyer had discussed with him the admissibility of the confessions, and his lawyer had made other determinations concerning defendant's guilt.

Assuming that there is some question concerning the admissibility in evidence of the confession, it was held in Busby v. Holman, 5 Cir., 356 F.2d 75, 78, that "a confession in the possession of the prosecutor which has been illegally obtained cannot be made the basis for a collateral attack upon a judgment of conviction entered upon a plea of guilty voluntarily and understandably made." See also Reed v. Henderson, 6 Cir., 385 F.2d 995, 997, where it was said: "Assuming that appellant had alleged and proved that his confessions had been coerced, and were therefore constitutionally inadmissible, appellant nevertheless could not prevail since the record establishes that his pleas [of guilty] were in fact voluntary. Appellant was represented by competent counsel at the time he entered his pleas of guilty, a factor which strongly militates against the conclusion that the plea was involuntary."

When we consider all the evidence and circumstances in this case, the findings and conclusions of the trial court clearly are not erroneous. Supreme Court Rule 27.26(j).

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.