**Clifford MAXWELL, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 55562.**

Supreme Court of Missouri,
Division No. 1.

Nov. 9, 1970.

Pohlmann & Dieckman, Lloyd F. Dieckman, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, for respondent.

HOUSER, Commissioner.

This is an appeal by Clifford Maxwell from an order overruling his motion to vacate and set aside a judgment of conviction of second degree murder entered on plea of guilty July 10, 1969. This motion was filed on February 9, 1970 under Criminal Rule 27.26, V.A.M.R. The ruling was made following an evidentiary hearing at which Maxwell was represented by court-appointed counsel, who has continued to represent Maxwell on this appeal.

Appellant was originally charged with first degree murder. The Legal Aid and Defender Society of Greater Kansas City was appointed to represent him. Later appellant employed an experienced criminal lawyer, Kenneth K. Simon, to represent him. Mr. Simon moved for and obtained a mental examination under Chapter 552, which resulted in a psychiatric report finding him mentally competent. This report was not contested under the provisions of § 552.020, par. 6. When he pleaded guilty appellant was accompanied by his retained attorney and his wife.

## I.

Appellant claims that he was denied effective assistance of counsel in violation of constitutional right, in that (1) his counsel told him he would receive a minimum sentence (which would have been ten years) whereas he was given twenty years' imprisonment; (2) that his counsel did not explain the psychiatric report finding him fully competent and did not fully advise him with respect to his rights under Chapter 552, namely, that he had a right to contest the opinion of the psychiatrists; to obtain an order granting him an examination by a physician of his own choosing, and to have a hearing before the

circuit court on the issue of mental capacity.

## 1. Minimum sentence

Appellant testified at the 27.26 hearing that Mr. Simon informed him as to the penalties for first and second degree murder and manslaughter and that he told Mr. Simon he would plead guilty to manslaughter but that he would stand trial before he would plead guilty to first or second degree murder; that he wanted a change of venue and a jury trial; that Mr. Simon reported to him that the prosecuting attorney would reduce the charge and that he could "get a minimum sentence," without saying what term of years was meant, or to what charge the original charge was to be reduced, or on what charge he could get a minimum sentence. Appellant testified that the first attorney he consulted (from the legal aid society) told him he could plead guilty to manslaughter for not to exceed ten years. Appellant testified that when he went to court on July 10, 1969 he was "still thinking in terms of ten years" and that he thought there would be another reduction of the charge from second degree murder. Appellant conceded the accuracy of the transcript of the proceedings on the day he pleaded guilty (during which he expressed to the court his desire to plead guilty to second degree murder) but maintained that he was not certain in his mind that this was going to be the final charge in the matter and that what he really expected was a minimum sentence—a ten-year sentence. He conceded that Mr. Simon did not tell him that the judge had agreed to sentence him to ten years.

Mr. Simon testified that he talked to the prosecuting attorney, who agreed to reduce the charge to second degree murder if a plea were entered and that he explained to appellant that the range of punishment for second degree murder was from ten years to life imprisonment; that he advised appellant that he had a right to a trial but that if they went to trial it would be on the original charge of first degree murder, on which the penalties were death or life imprisonment; that there were strong feelings in the community over the death of this high school boy and that it was a very serious matter; that there was an indication that the prosecutor would reduce the charge to second degree murder, with no recommendation, on a plea of guilty; that at no time did he tell appellant that there was a possibility of reduction of the charge to manslaughter; that in his discussion with the prosecutor he was told that such a reduction was impossible under the facts.

At the hearing when appellant pleaded guilty he expressed his understanding of the nature of the proceedings and that he had a right to a jury trial; his desire to waive a jury and submit the case to the court on a plea and his desire to plead guilty to the charge of second degree murder. He stated that he was in fact guilty of the offense as charged; that he had had an adequate opportunity to consult with family, friends and counsel; that there had been no indication by anyone as to what sentence the court would actually impose if the plea were accepted; that he understood the range of penalty for this offense to be from ten years to life, and that in spite of this he still wished to plead guilty; that he understood that the court was not bound by any recommendation his attorney might make and that the court would have the sole choice to assess the punishment deemed appropriate by the court; that no promises, threats, coercion or force had been exerted by anyone to cause him to enter the plea, and that he was relying on his own judgment after consultations with family and counsel; that he was not under medication of any kind and that he felt that as he stood before the court that he was fully competent to understand the nature of the proceedings.

After the 27.26 hearing the trial court expressly found that at the time he entered a plea of guilty appellant indicated that

he knew the range of punishment for the crime and that he committed acts which were the essential elements of the charge of murder in the second degree; that there is "no credible evidence" that he was promised any definite term of years upon a plea of guilty and that he "made a knowing and voluntary plea to the charge as reduced by the State." The trial court further recited that "[a]ll of the evidence indicates that Mr. Simon made a thorough investigation of this matter and utilized his best efforts on behalf of his client. In view of the notoriety of this case, Mr. Simon's success in obtaining a reduction of the charge from Murder in the First Degree is an indication of his diligent efforts on behalf of his client. This Court is well acquainted with Mr. Simon's qualifications as an attorney and especially in the area of criminal defense. The evidence persuades beyond any doubt that movant was afforded the effective assistance of counsel and is entitled to no relief by reason of such allegations."

## 2. Rights under Chapter 522

Appellant testified at the 27.26 hearing that Mr. Simon gave him "the papers" from the mental health center showing that "Everything is o. k."; that he read them; that Mr. Simon asked if the papers were in order; that appellant replied affirmatively, as best he could see; that Mr. Simon did not sit down and go over the papers with him. Asked if Mr. Simon ever explained to him that he had a right to a hearing on the question of competence, appellant answered that as far as he knew the only conversation they had about mental status was the morning in the courtroom and in the lawyer's office that afternoon. Appellant testified that he did not understand what they were talking about when the court inquired whether Mr. Simon had advised appellant that he had a right to a hearing on this issue. Appellant testified that he did not know that he had a right to a hearing on his mental competence; that if he had known

of this right he would have asked to have his own psychiatrists examine him, before entering a plea of guilty.

Mr. Simon testified that he furnished copies of the psychiatrists' reports to both appellant and his wife; that he was convinced from the mental report that this was a question of alcoholism, as the doctor found, and not mental disease or defect.

At the hearing on July 10, 1969 the judge stated that he had received the report from the health center. Mr. Simon told the court that he had gone over the matter with the defendant and stated "We feel in view of the report and in view of the defendant's present position that we do not wish to pursue any further remedy under Chapter 552; the defendant is aware of the proceedings, and is fully competent to stand trial." In answer to inquiry by the court Mr. Simon stated that he had advised his client that he had a right to a hearing on this issue if he wished and appellant acknowledged that "That is true." Both Mr. Simon and appellant then answered affirmatively that they agreed that the report be taken in evidence and utilized by the court in making a finding on that issue.

After the 27.26 hearing the court expressly found that appellant was examined by physicians at the mental health center; that the hospital reports indicated that appellant was competent to stand trial and was responsible for his actions at the time of the alleged crime; that Mr. Simon stated at the time of the entry of the plea that he did not intend to pursue the matter of mental condition, and that when he pleaded guilty appellant was not in any way physically or mentally incapable of understanding the proceeding.

\* \* \*

■ The trial court's findings and conclusions pursuant to Criminal Rule 27.26 (i) are presumptively correct and are to be sustained unless clearly erroneous. Crosswhite v. State, Mo.Sup., 426 S.W.2d

67, 70 [1]. They are not clearly erroneous, but are fully justified on this record. Appellant's testimony on the claim of ineffectiveness of counsel is unconvincing at best, is contradicted by the testimony of an esteemed criminal lawyer and is impugned in vital respects by appellant's own statements made in open court. In those instances in which the testimony of appellant conflicted with that of Mr. Simon it was the duty and function of the trial judge to resolve the question of credibility. Appellant's testimony with respect to Chapter 522 is diametrically opposite to the statement of Mr. Simon in open court of July 10, 1969, and controverts appellant's own acknowledgment "That is true" given at that time. It is apparent that the circuit judge believed Mr. Simon and did not believe appellant's testimony on these issues. We defer to the finding of the court in such instances, Walster v. State, Mo.Sup., 438 S.W.2d 1, 2 [1], and conclude that appellant was afforded effective assistance of counsel in all respects.

## II.

■ Appellant claims that he was "subjected to unlawful interrogation" in that he was not afforded the Miranda warnings at the time of his arrest and detention. He testified that he was interrogated and signed a written statement *prior* to the time the officers read him his constitutional rights. He contends that this fact affected his plea and induced him to plead guilty. The court found that appellant "made a knowing and voluntary plea." This finding is to be approved unless clearly erroneous. Nothing in this record demonstrates its error. The fact that there was an allegedly inadmissible confession in existence which might have been used in evidence against appellant is no sufficient reason to vacate the judgment and sentence entered pursuant to a plea of guilty, where the plea was otherwise voluntarily and understandably made. Roberts v. State, Mo., 458 S.W.2d 248, handed down October 12, 1970; Mitchell v. State, Mo.Sup., 447 S.W.2d 281, 283 [1]; Young v. State, Mo.Sup., 438 S.W.2d 280, 284 [4]; Reed v. Henderson, 6 Cir., 385 F.2d 995, 997; Busby v. Holman, 5 Cir., 356 F.2d 75, 78; McMann v. Richardson, (1970) 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763, in which the principal issue was "whether and to what extent an otherwise valid guilty plea may be impeached in collateral proceedings by assertions or proof that the plea was motivated by a prior coerced confession." 397 U.S., l. c. 760, 90 S.Ct., l. c. 1443, 25 L.Ed.2d, l. c. 767, and in which the court concluded, " * * * that a defendant who alleges that he pleaded guilty because of a prior coerced confession is not, without more, entitled to a hearing on his petition for habeas corpus * * *." 397 U.S., l. c. 771, 90 S.Ct., l. c. 1449, 25 L.Ed.2d, l. c. 773, 774.

## III.

■ Appellant claims that his plea of guilty was not made voluntarily and with understanding and that he sufficiently carried the burden of proof, but he presents no reasons and cites no authorities in support of these conclusions. We have carefully reviewed the proceedings of July 10, 1969. The hearing was extensive, exhaustive and detailed. It covered all phases of every pertinent matter. Forty-three questions were asked of and answered by appellant. The 12-page transcript of the proceedings is a model of careful, patient and thoroughgoing inquiry. The questions and answers palpably demonstrate that appellant knew what he was doing and that he pleaded guilty to second degree murder voluntarily, knowingly and with full understanding of the implications of his plea. The requirements of Criminal Rule 25.04 were fully satisfied. We have recited the trial court's findings on the question of voluntariness and have demonstrated that they are free of error.

The judgment is affirmed.

WELBORN, C., concurs.

HIGGINS, C., not sitting.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the Court.

All of the Judges concur.