FINCH, J., not a member of Division when cause was submitted.

Robert Francis **KUNKEL**, Jr., Movant-Appellant,

v.

**STATE** of Missouri, Respondent.

No. 57701.

Supreme Court of Missouri, Division No. 2.

Nov. 12, 1973.

Albert A. Michenfelder, Jr., Clayton, Michael W. O'Reilly, St. Louis, co-counsel for movant-appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

HOUSER, Commissioner.

Robert Francis Kunkel, Jr., having entered pleas of guilty on May 25, 1960 to indictments charging first degree murder of two persons, was sentenced to two consecutive terms of life imprisonment. On June 23, 1967 he filed a motion to vacate and set aside the two sentences and judgments, under Rule 27.26, V.A.M.R. Following an evidentiary hearing the motion was overruled. An appeal out of time was permitted. Since this appeal, involving two first degree murder cases, was pending in this Court prior to April 3, 1973, we retain jurisdiction under the order of this Court entered in such cases on April 9, 1973.

Appellant was 16 years old at the time of the commission of these crimes. Although the officers knew his age when he was taken into custody, suspected of car theft and murder, he was not taken immediately and directly before the juvenile court, as required by § 211.061, RSMo 1959, V.A.M.S. Instead, he was interrogated by police officers of two municipalities in St. Louis County; further interrogated at the prosecuting attorney's office, where he was given a polygraph test; and kept in jail overnight before being turned over to the juvenile authorities. During this time he gave the officers several oral and written confessions, and accompanied by officers went to his home where he produced the pistol used; went to the scene of the crimes where he reenacted the holdup and murders in the presence of the officers, and produced from underneath a cabinet the knife used to stab the victims after they were shot.

■■■ As we will presently develop, appellant's pleas of guilty, made with the advice of counsel and after conferring with relatives, were voluntarily and understandingly made. With that as a basic premise, appellant's complaints that during the period of police interrogation, before delivery to the juvenile authorities, he was not advised of his constitutional rights, including his right to counsel [citing In Re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967)]; that the interrogation prior to delivery to the juvenile authorities was in direct violation of § 211.061, RSMo 1959,

V.A.M.S. [citing State v. Arbeiter, 408 S. W.2d 26 (Mo.1966)], and that the pleas must be set aside because appellant's knowledge that the police had oral and written confessions and the murder weapons [all allegedly illegally obtained] compelled appellant to plead guilty, even if true, constituted procedural defects preliminary to the pleas, which were waived by the voluntary pleas of guilty. McClure v. State, 470 S.W.2d 548, 557 [5] (Mo.1971). That there were allegedly inadmissible confessions in existence or that the authorities were in possession of incriminating items of evidence obtained by allegedly illegal searches and seizures, which might have been used in evidence against appellant if he had gone to trial, are not sufficient reasons to invalidate his subsequent pleas of guilty and vacate the judgments and sentences entered pursuant to pleas of guilty otherwise voluntarily and understandingly made with advice of counsel. McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); Beach v. State, 488 S.W.2d 652, 655 [4] (Mo.1972); Wright v. State, 476 S.W.2d 605, 608 [3] (Mo.1972); Brodkowicz v. State, 474 S.W.2d 822 (Mo. 1971); Geren v. State, 473 S.W.2d 704 (Mo.1971); Maxwell v. State, 459 S.W.2d 388, 392 [2] (Mo.1970); Roberts v. State, 458 S.W.2d 248, 250 [3] (Mo.1970); Mitchell v. State, 447 S.W.2d 281, 283 [1] (Mo.1969); Young v. State, 438 S.W.2d 280, 284 [4] (Mo.1969); Turley v. State, 439 S.W.2d 521, 525 [6] (Mo.1969); Busby v. Holman, 356 F.2d 75, 78 (5th Cir. 1966); Reed v. Henderson, 385 F.2d 995, 997 (6th Cir. 1967).

The circuit court found that Kunkel's pleas of guilty were not involuntary, coerced, the result of mistake, misapprehension, fear or persuasion, as alleged, but were intelligently and freely made with full knowledge of the charges against him and the consequences of entering pleas of guilty to these charges.

Kunkel's privately employed and thoroughly experienced criminal lawyer testified as follows: He conferred with Kunkel a number of times, before and after the case was transferred from the juvenile to the general criminal division. (Apparently Kunkel was entirely comfortable with his attorney, because he called him by his first name.) Kunkel told his attorney in detail what had happened, including his experiences with the police. The attorney knew the contents of the confessions and knew what physical evidence was in the possession of the police. It was the attorney's opinion that there was absolutely no possibility of an acquittal; that it would be life or death. He was "afraid of a runaway jury," considering the widespread publicity given the case. Kunkel and his attorney had ample time, which was taken advantage of, to advise and consult on the alternatives of trial or plea of guilty. The attorney considered a plea of not guilty by reason of insanity but Kunkel objected and his mother vehemently objected to such a plea. Nevertheless, the attorney asked for and obtained a mental examination. When he received the psychiatric reports of the two doctors counsel read, studied and considered them, and discussed the reports with one of the doctors.

The conclusions of the two examining psychiatrists, introduced at the hearing at the time the sentences were passed, were that Kunkel was without psychosis at the time the crimes were committed and knew right from wrong; that he was aware of the nature and facts of the acts charged and that his behavior deserved punishment, but was not aware of the quality, meaning and implications of those acts; that he had an I. Q. of 83 (dull-normal); that he was immature, a borderline case, with a severe personality disorder, and was dangerous to society.

Kunkel discussed the case with his mother, father and minister. His mother visited him at the jail and insisted that he enter a plea of guilty in an attempt to avoid the death penalty, even though it meant consecutive sentences. The attorney investigated to determine the effect of consecutive life sentences (which the prosecuting

attorney agreed to recommend on a plea) and what effect such sentences would have on the chances for parole. The attorney was definitely opposed to pleading Kunkel guilty and receiving two consecutive life sentences. He tried without success to persuade the prosecuting attorney to permit Kunkel to plead guilty to one of the charges and recommend a life sentence "or less." The attorney advised Kunkel as to the applicable law; read to him excerpts from the reports of the examining psychiatrists; advised him that little could be done to refute the testimony of the psychiatrists or to get them to change their reports, and advised Kunkel that the range of punishment for the crimes charged was "life or death." Up until the time Kunkel decided to plead guilty the attorney did not influence Kunkel to plead guilty and take two consecutive life terms. After the attorney talked to Kunkel and after Kunkel spoke with his mother, father and minister, Kunkel made "the absolute decision" that he wanted to plead guilty. The attorney denied that he coerced Kunkel into a plea of guilty, and testified that Kunkel made the final decision "with full knowledge" of the facts given to him; that at that time "Bob was cognizant of what he was doing"; was aware that he had the choice of pleading guilty and receiving two consecutive life sentences, or of going to trial on two charges of first degree murder, with the prosecuting attorney asking for the death penalty each time. In the attorney's opinion the plea of guilty was "absolutely" freely made, "with the amount of intelligence Bob has, yes," and with full knowledge of the charges against him, "to the best of his mental ability," and of the consequences of making the plea.

■ Kunkel's testimony at the 27.26 hearing demonstrates clearly that he pleaded guilty voluntarily, knowingly and with full understanding of what he was doing. He testified that when he pleaded guilty he knew he was charged with the murder of Mr. and Mrs. Seal. Asked if he knew he was charged with having shot and stabbed these people he answered, "I knew that is what they had on me." He admitted that when he pleaded guilty he knew what he was doing in pleading guilty to two murders; knew that he was pleading guilty to the murder of Mr. and Mrs. Seal. He conceded that he had discussed the case with his lawyer on several occasions—about five times, for "maybe an hour at a time"; that he talked to his lawyer about pleading insanity; that his lawyer did not tell him to plead guilty and did not force him to plead guilty; that his lawyer told him he was liable to get the gas chamber but that if he would "take it" they would give him life imprisonment; that he pleaded guilty because he did not want to take a chance or gamble that they would "give him" the gas chamber. He stated that he had discussed it with his father and mother and that they did not force him to plead guilty. On this record the court's findings on the issue of voluntariness are not clearly erroneous but on the contrary are fully supported and amply substantiated on the record.

The judgment is affirmed.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.