Billie Joe JACKSON, Appellant,

v.

STATE of Missouri, Respondent.

No. KCD 26852.

Missouri Court of Appeals,
Kansas City District.

July 19, 1974.

**250**

———◆———

R. E. Moulthrop, Bethany, for appellant.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Before SHANGLER, P. J., and SOMERVILLE and SWOFFORD, JJ.

## PER CURIAM.

This is an appeal by Billie Joe Jackson from an order overruling his Rule 27.26, V.A.M.R., motion to vacate judgment of conviction and sentence to six years entered on his plea of guilty to the crime of burglary, second degree. The order was made following an evidentiary hearing at which Jackson was duly represented by court appointed counsel, who has continued to represent him on this appeal.

From the evidence presented at the hearing, it appears that at about 8:30 in the evening of September 23, 1971, someone broke into the Unionville Granite Works and Davis Chevrolet in Unionville, Missouri. Investigation of the Davis Chevrolet break-in by Putnam County sheriff, Leon McDonald, revealed blood on the edge and side of a broken window and change, a flashlight, a nail clipper, and a buckeye on the ground outside the window. Shortly after midnight, having received information that two youths had taken a hitchhiker with a bloody handkerchief on his arm to Lemons located approximately six miles south of Unionville, McDonald, accompanied by Trooper Swon of the Missouri Highway Patrol and Virgil Lunsford, Unionville City Policeman, went to Lemons. At Lemons, they saw Jackson standing by the side of the road with his thumb in the air trying to catch a ride. He had a cut on his arm with a bloody handkerchief around it and the corner of the pocket on his khaki pants was torn. The officers stopped, asked Jackson for identification, asked what he was doing and where he had come from. The officers placed Jackson in the patrol car, read him his rights and took him back to Unionville.

At about 1:20 A.M. on the morning of September 24, 1971, Jackson signed a statement saying he had broken a window at the Unionville Granite Works, knocked the combination lock off the safe with a hammer, and left via the back door without taking anything. The statement also said he had broken a window at the Davis Sales and Service Company, entered the building, triggered the burglar alarm and left the way he came in without taking anything. Although Jackson claimed that he made the statement pursuant to a "deal" he had made with the sheriff, the sheriff denied that any deal had been made.

The prosecuting attorney for Putnam County, filed a complaint in the Magistrate Court on September 24, 1971, charging Jackson with burglarizing the Unionville Granite Works. Jackson was taken before the Magistrate Court of Putnam County on September 28, 1971. The court explained the nature of the charge and read the complaint to Jackson. He was given an opportunity to consult with an attorney and after his right to insist upon a preliminary hearing had been explained to him, he waived a preliminary hearing. The magistrate court thereupon ordered him held to await the action of the circuit court.

An information charging Jackson with burglarizing the Unionville Granite Works, having been filed in the Circuit Court of Putnam County, Jackson appeared in said court on October 4, 1971, and was advised of his right to counsel. On that date an attorney Mr. Thomas Pickett, was duly appointed to represent Jackson. Thereafter, on November 1, 1971, Jackson appeared with his counsel in circuit court, waived formal arraignment and entered a plea of guilty to the charge. The circuit court interrogated defense counsel and ascertained that he had examined the information and advised defendant of the nature of the charge, had informed defendant of his right to a jury trial, and explained to him the range of punishment upon conviction or a plea of guilty. Defense counsel indicated that he had endeavored to ascertain the contents of the written statement given by Jackson as well as the method in which it was obtained. He felt quite certain that Jackson had been fully and completely advised of his rights and that the requirements of Miranda had been met. Further, Jackson had fully, freely and intelligently discussed the entire matter with him. Defense counsel stated that Jackson comprehended the advice given him.

The court interrogated Jackson at length and ascertained that he understood the charge, his right to a jury trial and his right to formal arraignment. Jackson indicated he directed his counsel to enter a guilty plea for him and that he understood by pleading guilty he would not have a jury trial and that he was admitting that he did commit the criminal act of burglary. He understood the range of punishment. There had been no promises made to him in order to get him to plead guilty, nor threats or pressure of any type exerted. He was not pleading guilty simply to get out of the county jail but was doing so because he was guilty. There had been no problems as far as his treatment at the jail was concerned. He had made a written statement concerning this charge and had so informed his attorney.

Jackson indicated to the court that he had no history of mental disease and was not under any type of medication or drugs. He told the court that he was intoxicated when he committed the burglary. The court asked Jackson to relate what he had done and Jackson told the court that he had hitchhiked into Unionville and spent about four hours drinking in a tavern. He then went out walking, broke the window, went in the place, knocked the dial off the safe, turned around and left. He disavowed any knowledge of why he broke in and knocked the dial off the safe, although he did say he was probably thinking about opening the safe.

Defense counsel related that he had explained to Jackson that voluntary intoxication was not a defense but that such could be used to mitigate intent. Knowing this, Jackson still desired to plead guilty.

The court found that Jackson, having been informed as to the nature of the charge and the range of punishment, knowingly and voluntarily entered a plea of guilty, and accepted the plea. The court suspended sentencing and requested a presentence investigation by the state probation and parole board.

On January 3, 1972, Mr. Pickett indicated to the court that Jackson desired to withdraw his guilty plea and enter a plea of not guilty. The assigned reason was that his statement and guilty plea had not been made voluntarily. The court proceeded to ask Jackson whether he recalled the questions propounded to him at his arraignment and his answers thereto. Jacksons said that he did but that he was presently more or less mixed up emotionally on the matter of what to do. He said he just couldn't make up his mind what he wanted to do. The court informed him that if permission to withdraw the guilty plea was granted, the state could elect to file under the Habitual Criminal Act but that he was entitled to take his chances with the jury. Mr. Pickett said that all this had been discussed with Jackson.

Thereupon, Jackson said that as it was all explained to him, he desired to leave the plea as it was. The court directed Mr. Pickett to review the entire matter with Jackson and resolve any uncertainty as to what Jackson wanted to do. The court informed Jackson that if the plea was left as it was, probation would not be considered. Jackson said he understood. He said further that he had indeed previously told Mr. Pickett that he desired to withdraw his guilty plea but that after Mr. Pickett had left, he decided by himself to leave the plea as it was. Jackson, after a short recess during which he again consulted with his attorney, reaffirmed his desire to plead guilty. The court then recited that he considered the request to withdraw the guilty plea to be withdrawn and reaffirmed that the guilty plea was entered voluntarily and knowingly. Jackson acknowledged that it was so. The court sentenced Jackson to six years in the Missouri Department of Corrections.

As previously mentioned, Jackson's 27.26 motion to vacate judgment and sentence was overruled. On appeal, he assigns error in four particulars.

■ The first assignment by Jackson is that his arrest and initial confinement were not in conformity with law and were accomplished under circumstances violative of his constitutional rights. The complaint about the arrest is that the officers had no probable cause to arrest him. An allegedly illegal arrest affords no ground for relief upon a 27.26 motion. Collins v. State, 454 S.W.2d 917 (Mo.1970). The complaint about the initial confinement is that he was not brought before the magistrate until five days after his arrest. Jackson does not relate wherein and why this was improper nor how it affected his guilty plea An allegedly illegal detention, in and of itself, is not a basis for a collateral attack upon the judgment. See: State v. Gee, 408 S.W.2d 1 (Mo.1966); State v. Ivey, 442 S.W.2d 506 (Mo.1969).

■ Jackson next complains that he was not represented by counsel at the time he waived his right to a preliminary hearing. The argument is that since the preliminary hearing is a critical stage of the prosecution, he must have counsel before a waiver of the preliminary hearing can be made. Assuming, arguendo, that an accused must have counsel before he can waive a preliminary hearing, the point will not be considered because "[a] plea of guilty voluntarily made with understanding of the nature of the charge is conclusive as to guilt and waives all nonjurisdictional, procedural and constitutional infirmities, if any, in any prior stage of the proceeding." Geren v. State, 473 S.W.2d 704, 707 (Mo.1971); Pauley v. State, 487 S.W.2d 565 (Mo. 1972).

■■ Although Jackson's third point is obscure at best, it appears to be a bifurcated attack concerning the use of the written statement he made within two hours of his arrest on September 23, 1971. One attack is that the prosecution was predicated solely on this written statement (there being no other evidence linking him to the offense charged), and that such statement was, in fact, inadmissible. Essentially, Jackson is contending that the evidence would have been insufficient to support the charge. Such a contention is not a proper subject for a 27.26 motion and affords no basis for relief here. State v. Benison, 415 S.W.2d 773 (Mo.1967). The other attack is that this allegedly inadmissible statement motivated the guilty plea. This contention, without more, affords no relief for "[t]he fact that there was an allegedly inadmissible confession in existence which might have been used in evidence against appellant is no sufficient reason to vacate the judgment and sentence entered pursuant to a plea of guilty, where the plea was otherwise voluntarily and understandably made." Maxwell v. State, 459 S.W.2d 388, 392 (Mo.1970); Kunkel v. State, 501 S.W.2d 52 (Mo.1973).

■ The trial court found and concluded that the guilty plea had been made voluntarily without force or threat and with full and knowing understanding of the nature of the charge and range of punishment. Review here is limited to a determination of whether the findings, conclusions and judgment of the trial court are clearly erroneous. Rule 27.26(j); Crosswhite v. State, 426 S.W.2d 67 (Mo.1968); Williams v. State, 508 S.W.2d 211 (Mo.App.1974). Review of this case record as heretofore set out, plainly shows that Jackson was adequately advised by his counsel, and that he understood the charge, his right to a jury trial, the range of punishment, and the consequences of pleading guilty. He specifically denied that any promises, threats or pressure had been made to get him to plead guilty, and none appear by this record. Similarly, there was no problem as far as his jail treatment was concerned, and he acknowledged this. He indicated that he was pleading guilty because he was guilty, and related in detail the burglarizing of the Unionville Granite Works, the crime with which he was charged. Although it appears that at some time between the entry of his guilty plea on November 1, 1971, and his sentencing on January 3, 1972, he told his attorney he wanted to withdraw his guilty plea, it also appears that before the request was communicated to the court, he had made up his mind to leave the plea as it was.[1] He told the court this and affirmed that he was pleading guilty voluntarily and knowingly. There was simply no evidence presented at the evidentiary hearing on the 27.26 motion which would support a conclusion that the guilty plea was not voluntarily and knowingly made and thus impeach the record made at the time of accepting the guilty plea. The findings, conclusions and judgment of the trial court are not clearly erroneous, and the judgment is, therefore, affirmed.

[1]. This, alone, is enough to emasculate Jackson's argument that the trial court's statement that the state could file under the

Habitual Criminal Act should Jackson withdraw his guilty plea pressured him into withdrawing his request to change his guilty plea.