Tomas G. ERVIN, Appellant,

v.

STATE of Missouri, Respondent.

No. KCD 27187.

Missouri Court of Appeals,
Kansas City District.

July 7, 1975.

Ronald M. Sokol, Public Defender, St. Joseph, for appellant; Daniel A. Radke, Certified Law Interne, on brief.

John C. Danforth, Atty. Gen., Robert M. Sommers, Asst. Atty. Gen., Jefferson City, for respondent.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special Judges.

ANDREW JACKSON HIGGINS, Special Judge.

Appeal from denial, after evidentiary hearing, of motion under Rule 27.26, V.A.M.R., to vacate and set aside judgment of conviction and sentence to life imprisonment for murder, second degree.

On January 31, 1969, in the Circuit Court of Buchanan County before the Honorable William H. Kimberlin, Judge, Tomas G. Ervin, born January 29, 1951, pleaded guilty to murder, second degree, reduced from a charge of murder, first degree, of Robert Berry by stabbing in the course of a robbery of Robert Berry on October 6, 1967.

As grounds for relief, movant asserted that he was denied due process and equal protection of law in that:

(a) His conviction and sentence were obtained by a guilty plea induced by threats, inducements, coercion and promises by police officers and prosecution officials during his pretrial confinement;

(b) He was taken into custody by St. Joseph policemen and subjected to illegal detention, hostile and protracted interrogation by detectives at the police station without benefit of advice of his constitutional rights, or family, friend, or counsel, which

resulted in statements, purported to be a confession;

(c) He was sixteen years of age at the time of his arrest and was treated by police officers, juvenile authorities, and the prosecuting attorney in a manner which violated his constitutional rights and rights as a juvenile which, because of his youth and inexperience, he was unable to legally, knowingly, and voluntarily waive;

(d) Evidence instrumental in coercing his guilty plea resulted from illegal search and seizure by St. Joseph policemen without warrant, valid waiver, or as an incident to arrest;

(e) He was denied compulsory process for two witnesses at preliminary hearing;

(f) He was "otherwise induced" to plead guilty to the reduced charge rather than to stand trial on the charge of murder, first degree;

(g) Although accorded psychiatric examination, no hearing or inquiry was held to judicially determine that defendant was, in fact, legally competent to stand trial;

(h) The juvenile court received and considered a social history report on defendant at a hearing October 19, 1967, subsequent to which the court dismissed the petition of the juvenile officer to permit prosecution under the general law, without first making said document timely available to defendant and his attorneys.

Although in conflict, particularly with respect to whether defendant was properly advised of his rights, whether he was accorded his rights as a juvenile, whether he was threatened, and whether he suffered mistreatment in pretrial confinement, the evidence warrants the following statement:

On October 10, 1967, Police Detectives Tony Marsola and Bill Piner, at the direction of Chief of Detectives Vern Starmer, together with Deputy Juvenile Officer Larry Whittington, went to St. Joseph Central High School at about 11:35 a. m., to bring Tomas G. Ervin, a juvenile, to the St. Joseph police station. The murder of Robert Berry had occurred on October 6, 1967, and, in the interim, the juvenile had stated to several friends that he had committed the murder. One friend in particular, Randy Kerns, was given the details of the crime before his friend's part in it was suspected; and, at his father's insistence, Randy gave this information to the police. The juvenile was awaiting the party in the office of the vice-principal, Donald Trout. He was advised that the juvenile officer, Leroy Maxwell, wanted to see him; and, according to Detective Marsola, "Whittington as juvenile officer read him his rights and then we just escorted him to the police station."

At the police station, movant was questioned by Mr. Maxwell, the juvenile officer. The interview took place in Chief Starmer's office with several other officers, including the prosecuting attorney, present. Prior to the interview, Mr. Maxwell advised the juvenile of his constitutional rights with respect to interrogation, including the right to counsel and to have a lawyer appointed for him if he could not afford one. He also was advised that he could have his mother and an attorney present, but he did not wish to have either present. He admitted that he committed the murder and gave a statement which was taken in shorthand and transcribed by the prosecuting attorney's secretary. Defendant testified that he was threatened during the interview by Chief Starmer; officers present denied the use of any threat or coercion.

At about 1:00 p. m. on the day of the arrest and questioning, Detectives Marsola and Piner went to the business school attended by defendant's mother, informed her that her son was at the police station, and transported her there. She was also informed that her son was suspected in the murder of Robert Berry and, after she talked to her son, she called an attorney, Mr. J. W. Roberts. On his advice, she caused the questioning to cease and con-

sented to a search of her home. Detectives Marsola and Piner, in the presence of defendant and his mother, searched the house on two occasions and obtained certain physical evidence including a knife, some money, and clothing worn by defendant at the time of the murder.

In the evening of October 10, the juvenile was taken to the juvenile cell in the Buchanan County jail where he was detained under order of Judge Connett of the Juvenile Court pending proceedings instituted in his interest in the Juvenile Court on petition of the juvenile officer. During the pendency of the proceedings in the Juvenile Court he had the services of Mr. Robert Randolph, an attorney appointed in his behalf by the Juvenile Court. Mr. Randolph refused permission for any further interviews of defendant other than those connected with the social history conducted by the juvenile officer.

The first hearing accorded defendant in Juvenile Court was recessed for purposes of psychiatric examinations. Ultimately, on November 30, 1967, a hearing was accorded in Juvenile Court at which defendant was present with his counsel who had access to the social history report and the report of psychiatric examination. After the hearing, the Juvenile Court found that defendant was not a proper subject to be dealt with under the Juvenile Code, and dismissed the petition of the juvenile officer to permit prosecution of the defendant as an adult. He was then released from the juvenile cell and confined in the general adult prison population area.

Attorneys Don Pierce, Frank K. Nichols, and Phillip H. Schwarz were appointed and represented defendant pending and during preliminary hearing, arraignment, preparation for trial, pleading, and sentencing.

While awaiting trial, defendant claims to have been threatened, abused, harassed, and intimidated by the sheriff and his deputies, all of which was disputed by the officers involved. Physical conditions at the jail were bad and the facilities were inadequate.

At the preliminary hearing, defendant's attorneys sought a continuance to secure the presence of two witnesses. The continuance was denied and the hearing proceeded over their objection. There is no record to show any refusal of process for securing such witnesses.

Defendant conferred with counsel and his parents prior to pleading guilty to the reduced charge of murder, second degree. Mr. Nichols made notes of counsel's conferences with their client, and his testimony from such notes shows that defendant was made aware of all facts, conditions, and circumstances surrounding his guilty plea including, among others, the probability of conviction if he took his case to a jury, the possibility of the death penalty, the range of punishment, and the prospects of probation and parole.

Mr. Nichols spent many hours over the period of a year with defendant. Defendant told him he committed the murder, how it was committed, and for what reason. In preparing for a motion to suppress evidence, he interviewed the juvenile and police officers and the associates of defendant whom he told of his crime. He recalled one boy in particular, Randy Kerns, because defendant had told him of the crime prior to anything that transpired at the police station.

Mr. Nichols also prepared a memorandum which he presented to defendant in the presence of cocounsel and defendant's parents:

"The following is an outline of the law and facts that apply to your case and which we want you to consider very carefully before deciding whether or not to enter a plea of guilty to second degree murder with the recommendation of life imprisonment by the prosecutor. You have been charged with first degree murder under the felony murder rule. We have moved to suppress

the use of your confession, the physical evidence, the knife, the check, clothes, money clip, etc., the statement of Randy Kerns, and the other four boys. This motion has been overruled which means that the Judge * * * will let them be used at your trial, notwithstanding our objection. Thus, at your trial the prosecution can introduce your confessions made in front of many * * * police officers and juvenile officers, your confessions made to five of your high school friends, the fact that you took the police to your home and gave them objects known to have previously been in possession of the cab driver. The jury will then have several alternatives as to their verdict. One, first degree murder. If convicted of this they must assess a penalty of either death or life imprisonment. We do not feel that the jury will assess the death penalty or if they did that it would ever be carried out, but it is a possibility that must be considered. Second, is second degree murder. If the judge instructs the jury that they may find you guilty of second degree murder, then the jury may assess a penalty of anything between ten years and life imprisonment. However, from the evidence in the case, such an instruction would not be mandatory and we feel that there is only a limited chance that the judge would even allow the jury to find you guilty of second degree murder. Third, manslaughter. We do not feel that there is any chance at all that the judge would allow the jury to find you guilty of manslaughter. In part, because it only carries a maximum sentence of ten years, and primarily because the evidence would not be such as to reasonably allow such a conviction. Fourth, acquittal. With the evidence available to the prosecution at this time the chances of acquittal are almost zero. Therefore, with all the evidence now being admissible, we feel that at trial the jury would either give you life imprisonment or a long stated period of years. Because of the unwritten policy of the parole board in Missouri it now appears that they will consider parole on a life sentence after serving ten years, but considered on a stated term of years only after one third of the years are served. We can, therefore, see that you would have to wait twenty five years to be considered for parole on a seventy five year term but only ten years on a life sentence. This fact alone is the strongest reason for pleading guilty and accepting a sentence of life imprisonment. If you plead guilty to second degree murder with the recommendation of life imprisonment, you will avoid the possibility of a death sentence or the possibility of receiving a long stated number of years. However, you will give up your chances of acquittal however remote it may be and you will give up the possibility the jury would give you a light sentence of ten years or more. We feel that your confession obtained by the juvenile officer at the police station with the police and prosecutor present but before you saw your mother and lawyer was unconstitutionally obtained and would eventually be held by a higher court to be inadmissible. We further feel that since the juvenile officer was instructed by your lawyer to stop questioning but instead continued and had you go to your home and present the police with physical evidence that this also violated your constitutional rights and is inadmissible. We feel the same about the use of the four boys to whom you confessed because their names were given to the police by you before you were actually protected. However, Randy Kerns came to the attention of the police because his father told them he thought Randy had information about the killing. Therefore, we feel his testimony will always be admissible and sufficient to convict since you confessed and gave him details of the crime before it was public knowledge. In summary we feel there's been a flagrant violation of your rights and that if the prosecution used your confession or the physical evidence, that there is a very good chance the trial court would later be reversed, that you would be given a new trial. At that new trial the confession and/or the

physical evidence would not be admitted. However, even if all these things were [not] admitted, Randy Kerns would remain and we feel that while the prosecution's case would be substantially weakened that you would still be convicted. This, we feel at a trial and appeal would be of benefit to society in general and that the police and juvenile officers would probably be made aware of the fact that juvenile offenders are entitled to better treatment than you received. However, we do not feel that this would do anything for you personally because of Randy Kerns. You've been offered a chance to plead guilty to second degree murder and receive a recommendation of life imprisonment. We want you to consider the matter very carefully, consult with your mother, and make a decision. We recommend that you accept it because of the reasons we have outlined. Unfortunately, we nor anyone else can give you any absolute assurance this is the best course of action. Should you decide you want a trial we will accept your decision and defend you to the limit of our abilities."

Defendant made his own decision to plead guilty. He did not complain to counsel of any specific item of mistreatment; he did not suggest he was pleading guilty simply to get out of the jail; he was not prompted how to answer questions that might be propounded by Judge Kimberlin; he did not suggest that he was pleading guilty as a result of any threats or promises. He did consider the matter of pleading guilty to murder, second degree, as opposed to a trial or plea of guilty of murder, first degree.

There was no mention of the psychiatric examinations at the time defendant pleaded guilty nor is there any record presented concerning their content.

Upon conclusion of the evidentiary hearing, the special judge, the Honorable John M. Yeaman, made a number of findings of fact and conclusions of law. Their substance was that defendant was guilty of the murder of Robert Berry, that he pleaded guilty voluntarily to a charge of murder, second degree, resulting from that murder, and that by his guilty plea, he waived defects, if any, in the proceedings preliminary to his guilty plea.

Appellant contends: (I) that the court erred in determining his guilty plea to have been voluntarily made. He asserts (A) that his guilty plea was coerced by physical and psychological effects of incarceration; (B) that it was motivated by fear of consequences of admission, if so, of unlawfully and unconstitutionally obtained statements and physical evidence; and (C) that it was entered involuntarily in order to avoid the possibility of capital punishment.

█ The insurmountable difficulty with this contention and its accompanying assertions is that such allegations, if true, were at most defects which were waived by his subsequent guilty plea. *Kunkel v. State*, 501 S.W.2d 52 (Mo.1973); *Beach v. State*, 488 S.W.2d 652 (Mo.1972); *McClure v. State*, 470 S.W.2d 548 (Mo.1971). See also *Durant v. State*, 523 S.W.2d 837 (Mo.App.C. D.1975).

█ Specifically, appellant's assertion that his guilty plea was induced by the conditions of his jail servitude while awaiting trial does not support relief in this proceeding because dissatisfaction with penal conditions and a hope that by a guilty plea a different kind of incarceration might be achieved are not for consideration on a motion to vacate sentence on the ground of involuntariness of the guilty plea. *Collins v. State*, 450 S.W.2d 186, 190[5] (Mo.1970); *Coleman v. State*, 473 S.W.2d 692, 693–694 (Mo.1971); *Beach v. State, supra*, 488 S.W.2d l. c. 655[6].

█ Similarly, claims of illegal search and seizure cannot be raised in proceedings under Rule 27.26, V.A.M.R., *Beach v. State, supra*, 488 S.W.2d l. c. 655[5]; and if a defendant's plea of guilty is otherwise voluntarily and understandably made, as will be determined later, existence of and the

possibility of the use in evidence of an allegedly inadmissible confession are not sufficient reasons to vacate the judgment and sentence which followed the guilty plea. *Maxwell v. State,* 459 S.W.2d 388, 392[2] (Mo.1970); *Beach v. State, supra,* 488 S.W.2d 1. c. 655[4].

■ Finally, it is settled that a guilty plea is not invalid simply because it was entered to avoid the possibility of the death penalty. *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *Skaggs v. State,* 476 S.W.2d 524, 528[6] (Mo.1972). And there is nothing in this record to suggest undisclosed improper plea bargaining which called for the reversal of *Shelton v. United States,* 246 F.2d 571 (5th Cir. 1957), in *Shelton v. United States,* 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958).

■ On the merits, the evidence on the question of defendant's pretrial confinement treatment is in conflict. He asserts he was psychologically and physically abused; witnesses for the State denied all such allegations. If appellant's version is accepted, the issue is not whether conduct of the officers was justified. The dispositive issue is whether under all the circumstances it may not be said that defendant's treatment while in jail had no effect on his guilty plea. *Brodkowicz v. State,* 474 S.W.2d 822, 827 (Mo.1971).

Also under Point I, appellant asserts (D) and (E) that under the totality of circumstances surrounding his guilty plea, it was an involuntary and unintelligent act as a matter of law entered without understanding of the nature of the charge and the consequences of the plea.

■ Appellant first states his position to be "that Judge Kimberlin's cursory inquiry of Ervin at the plea hearing was totally inadequate. Not only did the Judge fail to adequately address the defendant personally in order to determine that he was making a voluntary and intelligent plea, but he also failed to apprise defendant that in entering the plea of guilty, he was waiving his constitutional rights to trial by jury, privilege against self-incrimination, and opportunity to confront and examine witnesses as well as waiving the issues raised by the Motion to Suppress."

This contention is beset by three difficulties. First, no such ground for relief was presented to the trial court as required by Rule 27.26, *supra.* Second, appellant did not favor Judge Yeaman with any transcript of the plea proceedings at the hearing on his motion under Rule 27.26, nor has he furnished any such transcript to this court. Third, on its merits, the absence of a demonstration of compliance with Rule 25.04 does not require that the plea be set aside if, as in this case, the evidence at the hearing under Rule 27.26 shows that defendant's plea was voluntary. *State v. Mountjoy,* 420 S.W.2d 316 (Mo.1967).

■ Appellant's position on the totality of circumstances refers to the age of defendant and the effects of alleged irregularities in the proceedings beginning with his arrest and ending with his plea of guilty.

The evidence shows that Tomas G. Ervin was a nearly 17-year-old juvenile when first taken into custody and that he was an 18-year-old adult when he pleaded guilty to a reduced charge of murder, second degree. His testimony demonstrates his ability to understand and to articulate. He was represented during the time in question by five attorneys, and he communicated regularly with his parents. The testimony of Mr. Frank K. Nichols, alone, is sufficient to show that defendant was advised of all his rights and the consequences of a guilty plea and that he pleaded guilty voluntarily. Such testimony, together with defendant's testimony and admissions is conclusive that defendant's plea of guilty was voluntary and entered with assistance of competent counsel. For a remarkably similar case, see *Kunkel v. State, supra,* where a 16-year-old defendant claimed that the existence of ille-

gally seized evidence and a confession obtained in violation of his rights as a juvenile under the Juvenile Code, particularly Section 211.061, RSMo 1969, V.A.M.S., caused his plea to be involuntary. The court held that such circumstances did not require vacation of the judgment and sentence resulting from his guilty plea because the evidence showed it was voluntarily and understandingly entered. See also *Beach v. State, supra*, where a 16-month delay between arrest and trial, an illegally obtained confession, alleged illegal search and seizure of evidence, failure to accord hearing on *pro se* motions, alleged lack of medical care, and improper sanitation and exercise facilities were present. The court held that despite defendant's claim that all such combined to degrade his mental attitude so as to preclude an intelligent and voluntary guilty plea, a finding on other evidence that defendant knowingly and voluntarily pleaded guilty was not erroneous in a proceeding under Rule 27.26.

Appellant contends (II) that the court failed to make findings and conclusions on his claim of denial of rights by juvenile authorities and the juvenile court. His argument refers to the matters in point (c) of his motion to vacate and concludes, "Assuming the certification of appellant from the Juvenile Court was improper, the Trial Court would have been without jurisdiction to accept the plea or enter judgment thereon."

This contention is answered in the court's Conclusions of Law: "In further answer to Movant's arguments, even if Movant was denied due process and/or equal protection of the laws because his guilty plea was not voluntarily entered, or if his confessions were obtained in violation of his rights as a juvenile, or if some of the State's evidence was eventually found inadmissible due to an improper search and seizure, he nevertheless cannot prevail since the record establishes that his plea of guilty was in fact voluntary and entered with the assistance of competent counsel. The Movant's voluntary plea of guilty waived such procedural defects, if any, in the proceedings preliminary to the plea. The decision of *McClure v. State* [Mo.], 470 S.W.2d 548 (1971) is in concurrence with the above reasoning. Also in accord see *Kunkel v. State* [Mo.], 501 S.W.2d 52 (1973)."

Appellant contends (III) that the court failed to make findings and conclusions on his claim of denial of compulsory process for defense witnesses at preliminary hearing.

This as a ground for relief was asserted in point (e) of his motion; however, the record fails to show any evidence to have been proffered in support of the assertion. Consequently, there was nothing to require a finding or conclusion by the trial court on the matter and there is nothing for review in this court. *Smith v. State*, 513 S.W.2d 407, 410[1] (Mo. banc 1974).

Appellant contends (IV) that the court erred in finding that defendant waived a hearing on his claim of incompetence to stand trial before Judge Kimberlin in that "there was no evidentiary basis therefor."

Appellant would support this contention with references to "Exhibit A—Transcript of proceedings before The Honorable William H. Kimberlin * * * " which he asserts is a transcript of his guilty plea proceedings.

Once again, it is noted that no such transcript was furnished to Judge Yeaman or to this court for a review of the matter, and it is appellant's responsibility to cause a transcript to be prepared and filed covering all issues he wishes ruled and reviewed. *Jackson v. State*, 514 S.W.2d 532, 533–534[1–3] (Mo.1974).

The record in this case shows no question of the findings of the alleged psychiatric examinations by either the defendant or the State. Nor does it indicate any circumstances which would render any such

psychiatric examinations suspect. Accordingly, under Section 552.020(6), RSMo 1969, Judge Kimberlin was not obliged to inquire into defendant's competence *sua sponte*, *Miller v. State*, 498 S.W.2d 79 (Mo.App. 1973); *Newbold v. State*, 492 S.W.2d 809 (Mo.1973); and it may not be said that Judge Yeaman's finding that defendant waived any such question by his guilty plea is erroneous.

Judgment affirmed.

All concur.